**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH J. LYNCH, JOSEPH B. LYNCH** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO. 25-2382** |
| | : | |
| **SERGEANT T.J. LONG, SERGEANT** | : | |
| **SHANT BEDROSSIAN, DETECTIVE** | : | |
| **DAVID VERNACCHIO, DETECTIVE** | : | |
| **ROBERT LYTHGOE, JOHN DOES 1-2** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                   **October 20, 2025**

An adult son living in his parents' Haverford Township home complained to his township police and later the District Attorney's office on May 12, 2023 about the way police did their job and the salary paid to the police chief. The township police would not talk to him at the station. An officer forced him to leave the police station. The son promptly called the District Attorney claiming the police retaliated against him for complaints. The police learned of this call. The police then called him and his mother, telling him to stop the harassment or they would arrest the son. Other officers and mental health professionals then began investigating the son's mental health resulting in an incident report referencing concerns with the son's mental health.

The son and his father now pro se sue for a variety of constitutional and Pennsylvania law claims arising from police officers' alleged conduct on May 12, 2023. We dismissed the father's and son's claims against other persons for lack of service. The two remaining served police sergeants and two detectives move to dismiss. The father and son chose to not respond. We grant the uncontested motion but define the father's and son's ability to timely amend on limited claims not dismissed with prejudice consistent with the facts.

I.     **Alleged pro se facts**

Haverford Township resident Joseph J. Lynch disputed the way his home Township policed the neighborhood where he lived with his father Joseph B. Lynch and how the Township paid its police chief in Spring 2023.[1] Son Lynch spent ninety minutes with Township Sergeant T.J. Long on April 25, 2023 discussing how he and his neighbors could support long term safety issues in their neighborhood.[2] Son Lynch then emailed Sergeant Long on May 9, 2023 about an officer running a redlight near his home with no siren.[3]

### *Son Lynch complains at the Police Station.*

Son Lynch visited Haverford Police Department to address unresolved traffic safety issues in his neighborhood at approximately 11:30 A.M. on May 12, 2023.[4] He asked to speak with Haverford Police Chief John Viola to discuss rising crime in the Township including officers disobeying commands to address crime and to ask about Chief Viola's salary increase which Son Lynch characterized as highly suspicious and indicating corruption.[5] Son Lynch repeatedly asked to see Chief Viola.[6] The police department staff did not tell Son whether he could see Chief Viola.[7] Haverford Detective Joseph Fuller directed Son Lynch to leave the facility and then attempted to physically remove him approximately five minutes after Son Lynch first appeared at the department.[8] Son Lynch video recorded this interaction including telling non-party Detective Fuller "You're a fucking bum for trying to violate my rights."[9] Son Lynch told Detective Fuller he would address his complaints in the next Township meeting and then left the police station.[10]

### *Son Lynch reports retaliation to the District Attorney who advises the police.*

Son Lynch waited approximately twenty minutes after leaving the police department and called the Delaware County District Attorney's Office about his incident at the police department.[11] Son Lynch spoke with Detective Robert Lythgoe and mentioned corruption

involving Chief Viola's salary, aggressive behavior towards residents, and the police department's failure to address crime.[12] Son Lynch told Detective Lythgoe about expressing his concerns to the police department.[13] Son Lynch further told Detective Lythgoe he characterized Chief Viola's pay raise as highly suspicious and told Detective Lythgoe he shared his concerns with Sergeant Long earlier.[14] Son Lynch thanked Detective Lythgoe for his time and said he wanted to be part of the solution to make the community safer.[15]

Sergeant Long returned a call to Son Lynch's cell phone approximately ten minutes later yelling expletives into the phone.[16] Son Lynch hung up the phone.[17] Sergeant Long called back again two minutes later allegedly cursing at Son Lynch to which Son Lynch responded "fuck off" before hanging up.[18]

### A detective calls Son Lynch's mother about arresting Son Lynch.

Detective Vernacchio called Son Lynch's mother three minutes later saying detectives will charge her son with harassment if he returns to the Township building.[19]  Son Lynch waited approximately one hour and then called Detective Lythgoe again expressing his concerns about Sergeant Long's lack of professionalism including calling his mother threatening arrest for harassment if Son Lynch returned to the Township building.[20] Detective Lythgoe told Son Lynch he would address the matter but did not call Son Lynch back.[21] Detective Lythgoe instead called the police department to tell them of Son Lynch's call claiming the police are retaliating against him.[22]

### Detectives and mental health professionals visit the Lynch home.

Haverford Sergeants Long and Shant Bedrossian along with two unnamed mental health professionals then arrived at the Lynches' home at some unpleaded time later that afternoon.[23] The detectives and mental health professionals sought a mental health evaluation.[24] Sergeant Long told

3

Son Lynch he did not want to arrest him or investigate a crime.[25] Son Lynch repeatedly demanded the sergeants and mental health professionals leave the Lynch property.[26] The mental health professionals remained on the property for over an hour before they entered the home.[27] Sergeant Long asked Son Lynch to not call him "dude" to which Son Lynch responded "we are done talking I am done talking with you."[28] Sergeant Long then threatened to arrest Son Lynch for harassment.[29]

Father Lynch showed up at an unpleaded time on May 12, 2023.[30] Sergeants Long, Bedrossian and the mental health professionals believed Son Lynch required a mental health evaluation as detailed in the May 12, 2023 incident reports.[31]

## II.    Analysis

Father and Son Lynch sued Haverford Township Police Department, Police Chief John Viola, Sergeant T.J. Long, Sergeant Shane Bedrossian, Detective Joseph Fuller, Detective David Vernacchio, Detective Robert Lythgoe, the Delaware County District Attorney's Office, Delaware County Mobile Crisis for Law Enforcement and two unidentified mental health professionals claiming their conduct on May 12, 2023 violated their constitutional rights through First Amendment retaliation, unreasonable search and seizure under the Fourth Amendment, and a violation of Son Lynch's substantive due process rights under the Fourteenth Amendment.[32] They also seek damages under a variety of Pennsylvania claims.[33]

We dismissed all claims without prejudice against Haverford Township, Chief Viola, Detective Fuller, the District Attorney's Office, and the Mobile Crisis Unit on September 5, 2025 because the Lynches did not timely serve these parties.[34] They also claim to have served someone as "John Doe" but do not identify them and we have no basis to find proper service.[35] We today strike the service upon "John Doe" without prejudice to properly identify and then serve the alleged "John Does."

4

Sergeant Long, Sergeant Bedrossian, and Detective Vernacchio first moved to dismiss. They argue the Lynches: (1) cannot sue the Sergeants and Detectives in their official-capacity; (2) cannot state a Fourth Amendment claim for unlawful search or seizure; (3) did not sufficiently plead the First Amendment retaliation claim or Fourteenth Amendment due process claim; and (4) cannot proceed on the state law claims as barred in part by the statute of limitations.[36] Detective Lythgoe later separately moved to dismiss arguing the Lynches do not plead retaliatory intent or extreme and outrageous conduct sufficient to support either a First Amendment or intentional infliction of emotional distress claim.[37]

The Lynches are proceeding without counsel. We are directed by our Court of Appeals to be "mindful of our obligation to liberally construe a pro se litigant's pleadings . . . ."[38] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[39] But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."[40]

But liberally interpreting a pro se pleading does not excuse the Lynches' obligation to timely respond to motions filed in the case they brought in a public courthouse. Our Court through Local Rule 7.1(c) provides "[w]hen a party has failed to timely respond to a motion to dismiss within 14 days, the Court is authorized to grant the motion as uncontested."[41] Haverford Township Police Department, Chief Viola, Sergeant Long, Sergeant Shant, Sergeant Bedrossian, Detective Fuller, and Detective Vernacchio moved to dismiss on September 15, 2025.[42] Detective Lythgoe moved to dismiss on October 3, 2025.[43] Father and Son Lynch chose not to respond. Both motions to dismiss are uncontested.

We grant both Motions as uncontested. But we direct different next steps moving forward. We studied the allegations mindful we would grant a pro se party leave to amend if they could possibly state a claim in our limited jurisdiction.[44] We dismiss with prejudice (i.e., no leave to amend) the Lynches' official capacity and Fourteenth Amendment claims as they cannot state a claim as matter of law. We dismiss the Lynches' First Amendment retaliation, Fourth Amendment and state law claims without prejudice to timely amend or we will close the case.

### A. We dismiss all official capacity claims against individual state actors with prejudice.

Father and Son Lynch sue Sergeant Long, Sergeant Bedrossian, Detective Vernacchio, and Detective Lythgoe in both their individual and official capacities. Sergeant Long, Sergeant Bedrossian, and Detective Vernacchio argue the official capacity claims must be dismissed.[45]

The official capacity claims against Sergeant Long, Sergeant Bedrossian, and Detective Vernacchio are treated as claims against the Haverford Township Police Department. But the Haverford Township Police Department is not a "person" capable of being sued for civil rights violations under federal law.[46] The official capacity claims against Detective Lythgoe are claims against the Delaware County District Attorney's Office. Claims against county or municipal officials in their official capacity under section 1983 are treated as claims against the entity itself.[47] These claims are therefore duplicative.

We dismiss all official capacity claims against individual state actors with prejudice. To sue a municipal employee in his individual capacity, the Lynches must plead the existence of personal involvement.[48] "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."[49] In this

6

context, our Court of Appeals has held "a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible."[50]

### B. We dismiss Father and Son Lynch's Fourteenth Amendment due process claim with prejudice.

Father and Son Lynch claim Sergeant Long, Sergeant Bedrossian, and two unidentified mental health professionals deprived them of substantive due process under the Fourteenth Amendment by "harming their reputation and liberty."[51] Sergeants Long and Bedrossian argue the Lynches allege no facts showing a deprivation of a protected liberty or property interest or any denial of a required hearing or opportunity to be heard.[52]

"[T]o prevail on a substantive due process claim, 'a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience.'"[53] "One does not have a federal constitutionally protected liberty interest in his reputation."[54]

Father and Son Lynch allege Sergeants Long and Bedrossian "fabricated mental health claims to stigmatize [Son] Lynch and the household."[55] Father and Son Lynch do not allege harm from the mental health report other than harm to reputation.  The Sergeants did not place Son Lynch in mental health care or remove him from his parents' home. The Lynches do not allege a protected liberty or property interest or explain how conduct by Sergeants Long or Bedrossian constitutes a deprivation which shocks the conscience. Reputational injury alone is not a cognizable substantive due process violation.

We dismiss the substantive due process claim with prejudice.

### C. We dismiss Son Lynch's First Amendment retaliation claim without prejudice.

Son Lynch asserts a First Amendment retaliation claim against Sergeant Long, Sergeant Bedrossian, Detective Lythgoe, and two unidentified mental health professionals for "exercising

his First Amendment rights to report suspected corruption and petition the government.[56] The alleged protected speech is Son Lynch's May 12, 2023 visit to the Haverford Police Department to "inquire about Chief Viola's salary increase . . . which [Son] Lynch stated 'was highly suspicious' and indicative of corruption" and Son Lynch's report of suspected municipal corruption to Detective Lythgoe at the Delaware County District Attorney's Office on May 12, 2023.[57] The alleged retaliatory actions are Sergeant Long calls "cursing and threatening arrests" and "the warrantless home visit."[58]

Sergeants Long and Bedrossian argue the Lynches do not allege facts showing they took retaliatory action substantially motivated by Son Lynch's protected activity and therefore fail to state a plausible retaliation claim.[59] Detective Lythgoe argues he acted in response to Son Lynch's report and shared the allegations with the Haverford Police as part of a routine investigation, not as retaliation.[60]

Son Lynch must allege (1) he engaged in "constitutionally protected conduct"; (2) a state actor "engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights"; and (3) a "causal link between the constitutionally protected conduct and retaliatory action."[61]

Son Lynch does not plead facts showing his alleged constitutionally protected conduct caused Detective Lythgoe or Sergeant Bedrossian's alleged retaliatory action. Son Lynch must prove causation either through (1) "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[62] He "'must establish the [protected] activities were substantial and motivating factors' in the allegedly retaliatory conduct."[63] Our Court of Appeals instructs we

"must be diligent" in enforcing the causation requirement so a state actor is not "chilled from taking action that he deemed appropriate and, in fact, was appropriate."[64]

Neither Detective Lythgoe's nor Sergeant Bedrossian's pleaded conduct towards Son Lynch was sufficiently serious to chill a reasonable person's protected speech.[65] Detective Lythgoe did not make calls to Son Lynch "cursing and threatening arrests" nor conduct "the warrantless home visit."[66] He shared Son Lynch's misconduct report with the Haverford Police Department.[67] And Sergeant Bedrossian had no interaction with Son Lynch at the police station.[68] Detective Lythgoe did not disclose Son Lynch's report to Sergeant Bedrossian.[69] Son Lynch claims Sergeant Bedrossian entered Father Lynch's property for a mental health evaluation but identifies no statement, action, or decision by Sergeant Bedrossian showing knowledge of Son Lynch's protected conduct or intent to retaliate.[70] His only accompanied the mental health professionals during the evaluation.[71] Sergeant Bedrossian's involvement reflects a routine dispatch response, not retaliatory action. Son Lynch does not plead facts to support causation. We dismiss Son Lynch's First Amendment retaliation claim against Detective Lythgoe and Sergeant Bedrossian without prejudice to sufficiently plead a First Amendment claim.

The remaining First Amendment retaliation claim against Sergeant Long is dismissed without prejudice to timely amend as Son Lynch does not oppose this relief.

### D. We dismiss the unreasonable search claim under the Fourth Amendment without prejudice.

Father and Son Lynch claim Sergeant Long, Sergeant Bedrossian, and two unidentified mental health professionals violated their Fourth Amendment right against unreasonable search when they "entered [the Lynch] home without a warrant, consent, or exigent circumstances, and refused to leave [on May 12 ,2023]."[72] Sergeant Long and Sergeant Bedrossian argue the Lynches

9

do not allege a search or seizure on the Lynches property on May 12, 2023 and describe only a conversation with Father Lynch without alleging he ordered them to leave.[73]

A Fourth Amendment search occurs "either when the Government violates an individual's reasonable expectation of privacy or when the Government obtains information by physically intruding on persons, houses, papers, or effects."[74] "Trespass alone does not qualify [as a search], but there must [also] be . . . an attempt to find something or to obtain information."[75] "The Fourth Amendment prohibits only *unreasonable* searches [and t]he reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations."[76]

We dismiss Father and Son Lynch's Fourth Amendment claim without prejudice to timely amend specifying the improper search and seizure as to both Father and Son Lynch.

### E.  We decline to exercise supplemental jurisdiction over the state law claims.

Father and Son Lynch also plead trespass, malicious prosecution, defamation, and intentional infliction of emotional distress state law claims over which we may exercise our supplemental jurisdiction.[77] We can hear state claims where we have original jurisdiction over federal claims arising out of a common nucleus of operative fact.[78] The federal and state claims must arise from the same case or controversy.[79] We may decline to exercise supplemental jurisdiction over claims if we have dismissed all claims over which we have original jurisdiction.[80] We decline to exercise supplemental jurisdiction over the Lynches' remaining state claims absent federal question. We dismiss the Lynches' state law claims as we decline to exercise supplemental jurisdiction over them.

III.    **Conclusion**

Son Lynch complained to his Township's police department on May 12, 2023 about policing concerns and how the Township paid its non-party police chief. Two police sergeants and two detectives responded to his conduct by investigating his mental health and telling his mother of a potential arrest for further harassment. Son Lynch then added his father to bring this case alleging First, Fourth, and Fourteenth Amendment claims. The two sergeants and two detectives moved to dismiss. Son Lynch (and presumably his largely unpleaded father) chose not to oppose the motion to dismiss. We dismiss many of the Father and Son Lynch's claims with prejudice as they cannot proceed as a matter of law. We dismiss the remaining claims without prejudice to timely amend consistent with Federal Rules of Civil Procedure 8 and 11.

---

[1] ECF 1 at 6. We will refer to the father Joseph B. Lynch as "Father Lynch" and Joseph J. Lynch as "Son Lynch" for ease of reference, although Father Lynch is rarely mentioned in the allegations but decided to sue along with his adult son in two pending cases arising from this May 12, 2023 interaction at the police department. The Lynches separately sue Haverford Township and its officials at No. 25-3442 for events stemming from the May 12, 2023 events. We dismiss the companion case today as well with leave to amend to bring cognizable claims by November 21, 2025. We will then consider consolidating the remaining claims into one lawsuit given the substantial similarity in the facts alleged by the Lynches against many of the same parties in both cases.

[2] *Id.* at 12.

[3] *Id.* at 11–12.

[4] *Id.* at 6.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.* at 6–7.

[9] *Id.* at 7.

[10] *Id.* Haverford Detective David Vernacchio thereafter, on an unpleaded date, prepared an incident report of Son Lynch yelling obscenities and acting aggressively during his May 12, 2023 visit to the police station. *Id.*

[11] *Id.* at 8.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at 9.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 10.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 11.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 13.  The Lynches do not plead another fact about Father Lynch's involvement on May 12, 2023 but he still claims constitutional harm. Father and Son Lynch seek approximately ten million dollars in compensatory damages, punitive damages, as well as declaratory and injunctive relief aimed at reforming training within the Haverford Township Police Department and the Delaware County Mobile Crisis for Law Enforcement. *Id.* at 21–25.

[31] *Id.* at 14.

[32] *Id.* at 3–4, 16–19. Congress through section 1983 provides a remedy for a violation of constitutional rights but it is not a source of substantive rights; it is a vehicle to vindicate federal rights "elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 provides, in relevant part: "Every person who, under color of any statute . . . of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. To state a civil rights claim, Father and Son Lynch must allege (1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

[33] ECF 1 at 19–21.

[34] ECF 12.

[35] ECF 10. *See, e.g., Love v. Does*, No. 17-1036, 2020 WL 5760447, at *14 (D.N.J. Sept. 28, 2020), *aff'd sub nom. Love v. Does 1-9*, No. 17-01036, 2021 WL 2134940 (D.N.J. May 26, 2021) ("Fictitious John Doe Defendants cannot be served without a name, or sufficiently identifying information, and address. . .").

[36] ECF 14. Haverford Township Police Department, Chief Viola, Sergeant Long, Sergeant Shant Bedrossian, Detective Fuller, and Detective Vernacchio move to dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6). We earlier dismissed the Police Department, Chief Viola, and Detective Fuller as the Lynches did not timely serve the summons upon them. ECF 12. We today evaluate arguments presented by the served state actors: Sergeants Long and Bedrossian and Detectives Vernacchio and Lythgoe.

A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint under the plausibility pleading standard. *Zanetich v. Wal-Mart Stores East, Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). A plaintiff must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) we "identify allegations that . . .

'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' . . . in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations . . . and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]' . . ., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted).

[37] ECF 18. Detective Lythgoe also moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6).

[38] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)) (cleaned up).

[39] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

[40] *Id.* (quoting *Mala*, 704 F.3d at 245).

[41] *Ewideh v. Keystone Advanced Remodeling, LLC*, No. CV 23-3032, 2024 WL 5668922, at *1 n.1 (E.D. Pa. Jan. 25, 2024) (quoting *King v. Luppold*, 2023 WL 4671346, at *2 (E.D. Pa. July 20, 2023)); *see also Fleming v. United States VA Med. Ctrs.*, 348 Fed. App'x. 737, 738 (3d Cir. 2009) (affirming the district court's grant of a defendant's motion to dismiss under Rule 7.1(c) as "within its authority" when the plaintiff failed to respond for approximately four weeks); *Abdulhay v. Abdulhayoglu*, 2022 WL 6768194, at *3 n.3 (E.D. Pa. Oct. 11, 2022) ("It is within a district court's discretion to grant a motion to dismiss as unopposed pursuant to Local Civil Rule 7.1(c)").

[42] *See* ECF 14.

[43] *See* ECF 18.

[44] We do not include or analyze the claims against the Haverford Township Police Department, Chief Viola, and Detective Fuller because we previously dismissed all claims against them. *See* ECF 12.

[45] ECF 14 at 8–9.

[46] Police departments are mere sub-units of the municipality and may not themselves be sued as "persons" acting under color of state law. *See Bush v. Pennsylvania*, No. 23-2216, 2023 WL 5339612, at * 2 (E.D. Pa. Aug. 17, 2023) (citing *Bonenburger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)); *Draper v. Darby Twp. Police Dep't*, 777 F. Supp. 2d 850, 856 (E.D. Pa. 2011) (citing *Martin v. Red Lion Police Dep't*, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) (noting the police department is not a "person" under § 1983 "because it lacks an identity separate from the municipality of which it is a part.")).

[47] *See Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.,* 436 U.S. 658, 690 n. 55 (1978)).

[48] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[49] *Id.*

[50] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

[51] ECF 1 at 18.

[52] ECF 14 at 11.

[53] *Chambers ex rel. Chambers v. School Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009) (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)).

[54] *Austin v. Neal*, 933 F. Supp. 444, 455 (E.D. Pa. 1996) (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)).

[55] ECF 1 at 18.

[56] *Id.* at 16.

[57] *Id.* at 6, 8.

[58] *Id.* at 16.

[59] *Id.* at 10.

[60] ECF 18 at 4–5.

[61] *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (cleaned up) (footnote omitted).

[62] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[63] *Morrieson v. City of Jersey City*, No. 18-12974, 2022 WL 819634, at *4 (D.N.J. Mar. 18, 2022) (quoting *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 361 (3d Cir. 2021)).

[64] *Lauren W.*, 480 F.3d at 267.

[65] *See Revell v. City of Jersey City*, 394 Fed. App'x 903, 906 (3d Cir. 2010) (citing *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003)) ("Courts have declined to find adverse action where the 'alleged retaliatory acts were criticism, false accusations or verbal reprimands.'").

[66] ECF 1 at 16.

[67] *Id.* at 8–10.

[68] ECF 1 at 6–7.

[69] *Id.* at 9.

[70] *Id.* at 10.

[71] *Id.* at 13.

[72] *Id.* at 17.

[73] ECF 14 at 10.

[74] *Edwards v. Banpfield*, No. 22-2062, 2023 WL 2815963, at *3 (E.D. Pa. Apr. 6, 2023), *appeal dismissed*, No. 23-3137, 2024 WL 2814503 (3d Cir. Apr. 5, 2024) (quoting *Stone v. Martin*, 720 F. App'x 132, 135 (3d Cir. 2017)).

[75] *Id.* (quoting *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012)).

[76] *Grady v. North Carolina*, 575 U.S. 306, 310 (2015).

[77] ECF 1 at 19–21; 28 U.S.C. § 1367(a).

[78] *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 307–08 (3d Cir. 2003).

[79] *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 303 (3d Cir. 1998).

[80] 28 U.S.C. § 1367(c).