**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH J. LYNCH, JOSEPH B. LYNCH** | **:** | **CIVIL ACTION** |
| | **:** | |
| | **:** | |
| **v.** | **:** | **NO. 25-2382** |
| | **:** | |
| **SERGEANT T.J. LONG,** *et al* | **:** | |

## MEMORANDUM

**KEARNEY, J.**                                                            **April 7, 2026**

Residents enjoy broad rights to complain about their local police officers' performance and compensation. We expect the police officers and other township agents prudently respond to the complaints without personal animus.

We today evaluate a resident's pro se allegations challenging the response by his township's law enforcement and township officials to his May 2023 visit to his township police department raising concerns about traffic safety in the neighborhood where he lived with his parents and the police chief's recent salary increase. A township detective directed the resident to leave and tried to physically remove him from the police department. The resident immediately called a county detective to complain about the police officer's treatment of him moments earlier at the department and his corruption concerns. The county detective promptly called the township police department presumably to investigate. Township officers quickly responded to the detective's inquiry by calling the resident with comments laced with profanity; they then called the resident's mother threatening the police would arrest her son for harassment; and, lastly, went with mental health professionals to his home where he lived with his parents. Township code enforcement officials waited a few weeks and then began visiting his parents' property inquiring about potential landscape code violations. The officials came on the parents' property and eventually cited the parents in Summer 2023 for violating a landscape ordinance. The resident,

his father, and the Township appeared before a local judge on the landscape code violation on Halloween 2023. The judge found no basis to cite the father for a landscaping code violation but a detective in the courtroom and earlier involved with the resident decided to physically remove the complaining resident and detained him by force outside the judge's courtroom.

The resident and his father then waited almost two years before filing three cases without the aid of a lawyer challenging each 2023 interaction: the May 12, 2023 conduct towards the resident and his father, the Summer 2023 landscape code citation of the father's property, and detaining the resident during the Halloween 2023 hearing. We dismissed the father and son's earlier pro se allegations for not stating a claim but afforded them a final opportunity to pursue a consolidated complaint. We now study these amended consolidated allegations with deference to the well-pleaded facts in response to the Motions to dismiss by township officials and a county detective which include counter–facts not appropriate for our review today. We are looking only at the allegations as a matter of law; we do not review the several fact-based defenses today.

The resident overreaches. He looks for conspiracies and broadly concludes all conduct by all persons involved with him violates his constitutional rights. He does not plead facts allowing us to plausibly infer a legal basis for most of his claims. His father does not state a claim after three tries. But the resident pleads enough facts to proceed on five of his claims. We will now proceed into discovery where we expect to soon learn the other side of these three incidents from late morning on May 12, 2023 to October 31, 2023.

### I. Alleged pro se facts and the public record.

Joseph J. Lynch lived in 2023 in a Haverford Township home owned by his father Joseph B. Lynch and his mother. Son Lynch did not like how Haverford Township policed the traffic in his neighborhood or how the Township recently increased the salary for its police chief John Viola in Spring 2023.[1] Son Lynch met with Haverford Township Police Sergeant T.J. Long on April 25, 2023 for approximately ninety minutes to discuss his neighborhood traffic safety concerns.[2] Son Lynch emailed Sergeant Long on May 9, 2023 about a township police officer running a redlight near his home with no siren.[3]

### *The Lynches' encounters with Township officials on May 12, 2023.*

Son Lynch then personally visited the Haverford Police Department at approximately 11:30 AM on May 12, 2023.[4] He asked to speak with Chief John Viola to discuss rising crime in the Township and to ask about Chief Viola's salary increase.[5] Township detective Joseph Fuller directed Son Lynch to leave the building and attempted to physically remove him.[6]

Approximately twenty minutes later, around 12:00 PM, Son Lynch contacted the Delaware County District Attorney's Office and reported alleged corruption involving Chief Viola's compensation, failures by the police department to address crime, and Sergeant Long's admissions "officers were disobeying commands" and there "was a personnel problem."[7] Delaware County Detective Robert Lythgoe of the District Attorney's Office then called Sergeant Long to discuss Son Lynch's report.[8]

Sergeant Long turned around and called Son Lynch around 12:10 PM and yelled expletives at him.[9] Sergeant Long called Son Lynch again two minutes later.[10] Township Detective David Vernacchio called Son Lynch's mother multiple times around 12:15 PM threatening the police

would charge Son Lynch "with harassment if he 'continues his conduct including his complaints at the police station.'"[11]

Son Lynch called County Detective Lythgoe back around 1:30 PM to inform him of "the threat of arrest he had received for returning to public property" and Son Lynch's fear "of further action by [the Haverford Police Department] in response to" his report.[12] Detective Lythgoe called the police department again and disclosed Son Lynch's second call.[13]

Township Sergeants Long and Shant Bedrossian "dispatched a Mental Health Mobile Crisis Response" to the Lynch residence at 2:30 PM on May 12.[14] The two Sergeants and unnamed Mobile Crisis for Law Enforcement professionals arrived at the Lynch residence without a warrant.[15] Sergeant Long told Son Lynch they were not investigating a crime and he was not there to arrest him.[16] Sergeant Long asked Son Lynch if had contacted the Criminal Investigation Division of the Delaware County District Attorney's Office.[17] Sergeant Long told Son Lynch he was there "to tell [Son Lynch] to stop harassing" him and Son Lynch's "single email constituted harassment."[18] Sergeants Long and Bedrossian "stated they were present to 'protect' the [mental health professionals]."[19] Son Lynch commanded Sergeants Long and Bedrossian to leave the property.[20] The Sergeants "remained on the property for approximately ten minutes before departing."[21]

The mental health professionals entered the Lynch home without consent or a warrant and "refused to leave after repeated commands to do so . . . for over an hour."[22] The mental health professionals "stated that the criminal behavior reported to Sergeant Long and [Haverford Police] by [Son] Lynch were 'zoning issues.'"[23] Father Lynch (the property owner) showed up at an unspecified time during this May 12 encounter and found himself "rendered temporarily mute and unable to speak."[24] "No mental health evaluation was mentioned or conducted" and "[n]o one

4

identified the visit as a crisis response, investigation, or mental health evaluation" during the visit.[25]

### *Son Lynch seeks and threatens criminal charges against the mental health professionals.*

Son Lynch contacted the Delaware County District Attorney's Office multiple times between May 13 and June 12, 2023, seeking the identities of the mental health professionals who visited the Lynch property on May 12, 2023.[26] Mobile Crisis for Law Enforcement professionals visited the Lynch residence during this period and, on one occasion, Son Lynch confronted the professionals and told them he would file criminal charges if they returned.[27] The mental health professionals did not evaluate Son Lynch's mental state during these visits.[28]

### *Township officials begin examining the Lynch property for landscaping code violations.*

Haverford Township Code Director Joseph Celia visited the Lynch property on June 19 or 20, 2023, and identified "three items" which "constituted code violations involving landscaping."[29] Code Director Celia "acknowledged the items were in fact legal immediately after being challenged."[30] Son Lynch denied Code Director Celia access to Father Lynch's property absent a warrant.[31] Code Director Celia admitted the Police Department sent him, and photographed the premises despite being directed to leave.[32] Code Director Celia walked onto Father Lynch's property on June 27, 2023.[33] Code Director Celia admitted Father Lynch's landscaping "looked great" but issued a code violation.[34]

Sergeant Robert McCreight went to the Lynch residence on July 2, 2023 at approximately 8:45 PM and "confronted [Father] Lynch" about the landscaping code violations.[35]

Haverford Township Manager David Burman drove past the Lynch property on July 3, 2023 and observed Father or Son Lynch "planting a bush."[36] Township Manager Burman then drafted a code violation notice based on his observations and signed it as "Township Manager."[37]

The Township Notice "referenced 'hand delivering Notices of Violation to the Property'" and stated "[a]ny person violating the provisions of this article shall be guilty of a misdemeanor and upon conviction shall be subject to a fine of not more than $1,000 for each violation, recoverable with costs, or imprisonment of not more than 90 days, or both."[38]

Code Director Celia returned to the Lynch residence on July 5, 2023 and entered Father Lynch's property after being denied permission.[39] Code Director Celia stated "I'm sorry. Dave made me do it" and delivered the "draft created by [Township Manager] Burman."[40]

### *The Township convenes an August 23, 2023 landscaping code violation hearing.*

The Township scheduled a hearing on Father Lynch's landscaping code violations for August 23, 2023 before Magisterial District Judge Duerr.[41] Code Director Celia admitted the police sent him to the Lynches' property but also conceded "complaints originate from residents, not police."[42] Judge Duerr continued the hearing until October 31, 2023.[43]

### *Son Lynch's October 2023 conduct towards the Township.*

Son Lynch engaged in public criticism of the Police Department in October 2023.[44] Son Lynch placed a sign outside the Lynch residence with Father Lynch's agreement stating "Who else is HTPD harassing?" Two Haverford officers visited the Lynch residence on October 17, 2023 at approximately 9:35 AM and referenced the lawn sign and Facebook comments made by Father or Son Lynch.[45] One officer "demanded [Father or Son Lynch] report to the police station while refusing to answer why" and Father or Son Lynch ordered the officers to leave.[46]

Father or Son Lynch called emergency dispatch *911 four times to file a harassment report.[47] Four officers then arrived at the Lynch residence but declined to take a report.[48] Father or Son "observed multiple vehicles parked near" the Lynch property on October 24, 2023.[49]

Haverford Police Department blocked Son Lynch from "official government social media accounts" on October 25, 2023.[50]

***Acts during the continued October 31, 2023 landscaping code violation hearing.***

Township officials and Father and Son Lynch appeared before Judge Duerr for the continuing landscaping code violation hearing on October 31, 2023.[51] Detective Fuller (from the May 12 police department visit) attended the hearing in plain clothes.[52] Son Lynch spoke on Father Lynch's behalf.[53] Father or Son Lynch argued the legality of the landscaping.[54]

Judge Duerr expressed concern about Son Lynch's manner of speaking during the hearing and asked Father Lynch to request Son Lynch leave the courtroom.[55] Son Lynch stood, gathered his belongings, and asked whether Judge Duerr directed him to leave.[56] Detective Fuller then began to walk to the front of the courtroom.[57] He had not previously identified himself as law enforcement.[58] Detective Fuller approached Son Lynch and "grabbed [Son Lynch]'s right forearm," "twisted [his] arm and body," and "began punching" and "push[ing him] from behind."[59] Detective Fuller continued to push and strike Son Lynch from behind as Son Lynch walked out of Judge Duerr's courtroom.[60] The physical encounter continued into the hallway outside the courtroom and Detective Fuller took Son Lynch to the ground.[61] Detective Fuller then said "I got you" to Son Lynch but refused to tell Son Lynch the basis for detaining him.[62] Father Lynch "attempted to leave the building to record the event in the hallway as directed by" Son Lynch but Detective Fuller prevented him from leaving.[63]

Chief Viola then arrived outside Judge Duerr's courtroom and proclaimed "ok well, that's all we wanted to fucking do is finally lock him up," and told Father Lynch the police intended to charge Son Lynch with harassment for threatening emails.[64] Chief Viola then acknowledged there were no threats, but the emails had "to stop."[65]

Township Sergeant McCreight then requested to meet with Judge Duerr in her Chambers.[66] Sergeant McCreight and Chief Viola both met with Judge Duerr and Sergeant McCreight turned off his body camera before the meeting.[67] Detective Fuller remained standing in the doorway during the meeting.[68] During the meeting, Chief Viola and Sergeant McCreight described Son Lynch as "mentally ill," urged he be involuntarily committed for evaluation, and "compared [the Lynches'] landscaping to 'the MOVE Movement.'"[69] They also suggested Judge Duerr find Father Lynch guilty and allow him to appeal.[70] Judge Duerr stated she "didn't feel personally threatened or a danger to [her] or [Detective] Fuller" and Son Lynch "never engaged in actions or verbal communications that would harm anyone."[71]

Judge Duerr found Father Lynch not guilty of the landscaping code violations.[72]

### Police detain Son Lynch.

Haverford Police detained Son Lynch. Haverford Police did not advise Son Lynch of his *Miranda* rights, denied Son Lynch access to counsel, did not provide Son Lynch with food, and denied medical care despite reporting "a ton of pain" during his detention.[73] Sergeant McCreight denied Father Lynch "the opportunity to provide a witness statement."[74] "Prosecutors required a mental health evaluation despite no prior diagnosis of a mental health condition."[75]

### Son Lynch and his father file lawsuits now consolidated before us.

Father and Son Lynch filed three separate lawsuits against various Haverford Township and Delaware County state actors—one arising from the May 12, 2023 events, one arising from the June and July 2023 code citations and visits to the Lynch property and the August 2023 code enforcement hearing, and one arising from the October 31, 2023 arrest. We ordered the parties appear for a pretrial conference on the three cases on January 28, 2026.[76] Son Lynch claimed he could not appear for our hearing re-scheduled at his request as he then sought asylum in an

8

undisclosed location.[77] Father Lynch appeared and made argument for both he and his son. But Son Lynch later admitted he prepared inaccurate papers for Father Lynch to present to us (although he claimed to be seeking asylum in another part of the world at the time).[78] Father Lynch admitted to us: his presence during the May 12, 2023 visit; Sergeants Long and Bedrossian accompanied two mental health workers to the Lynch residence, approached the front door, never entered the home, and left the property while the mental health workers entered with Father Lynch's permission.[79] Father Lynch admitted he did not direct Sergeants Long and Bedrossian to leave and confirmed they retreated to the sidewalk shortly after their arrival. We reviewed each claim with Father Lynch and dismissed claims plainly barred by the statute of limitations. We notified Father Lynch we would provide him and Son Lynch one last leave to plead claims under federal law based on the verifiable facts which he and his son must file in good faith subject to a variety of sanctions should they misrepresent facts. We consolidated the three actions and granted leave to file a single consolidated complaint.[80]

Father and Son Lynch consolidated their varied timely claims to sue Sergeant T.J. Long, Sergeant Shant Bedrossian, Detective Joseph Fuller, Detective David Vernacchio, Detective Robert Lythgoe, Haverford Township, Police Chief John Viola, Sergeant Robert McCreight, Code Director Joseph Celia, Township Manager David Burman, and two unidentified mental health professionals alleging civil rights violations and under Pennsylvania law.[81]

Father and Son Lynch each allege First Amendment retaliation based on Son Lynch's protected speech on May 12, 2023 and Son Lynch further alleges Detective Fuller violated his constitutional rights through false arrest and excess force under the Fourth Amendment.[82] The Lynches also allege Chief Viola, Detective Fuller, Township Manager Burman, Sergeant McCreight, Sergeant Long, and Sergeant Bedrossian conspired to deprive them of their First and

Fourth Amendment rights.[83] They further seek to impose municipal liability upon Haverford Township.[84] The Lynches also bring claims under Pennsylvania law for trespass, malicious prosecution, intentional infliction of emotional distress, assault and battery, and false arrest.[85]

## II.    Analysis

Sergeant Long, Sergeant Bedrossian, Detective Fuller, Detective Vernacchio, Haverford Township, Police Chief Viola, Sergeant McCreight, Code Director Celia, and Township Manager Burman move to dismiss the consolidated allegations arguing: 1) Father and Son Lynch still do not plead sufficient facts allowing us to plausibly infer a federal claim, including First Amendment retaliation and civil rights conspiracy, because the allegations are conclusory and do not establish retaliatory conduct, causation, or an agreement among the sued individuals; 2) several claims are time-barred under the applicable two-year statute of limitations; 3) certain alleged conduct does not implicate the constitutional provisions invoked or reflects lawful action supported by probable cause or judicial direction; 4) Father and Son Lynch do not plead facts allowing us to plausibly infer a municipal policy or custom sufficient to support municipal liability and improperly attempt to rely on *respondeat superior* liability; 5) state law claims are barred by statutory immunities and otherwise fail on the merits; and, 6) the individual state actors are entitled to qualified immunity.[86] Detective Lythgoe separately moved to dismiss arguing the Lynches do not plead facts allowing us to plausibly infer retaliatory intent or extreme and outrageous conduct sufficient to support either a First Amendment or intentional infliction of emotional distress claim against him based on his two May 12 phone calls to Haverford Police investigating Son Lynch's claims.[87]

We are directed by our Court of Appeals to be "mindful of our obligation to liberally construe a pro se litigant's pleadings . . . ."[88] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[89] But "pro se litigants still must

allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules— they must abide by the same rules that apply to all other litigants."[90]

We grant Detective Lythgoe's Motion to dismiss in full and dismiss him with prejudice. We grant the Haverford state actors' motion in part. We dismiss all Father Lynch's claims with prejudice after multiple attempts to plead his claims. We dismiss Son Lynch's claims against Sergeant McCreight, Chief Viola, Code Director Celia, Township Manager Burman, and Haverford Township.

Son Lynch may proceed into discovery on: his First Amendment retaliation claims against Detective Vernacchio and Sergeant Long arising from the May 12 events; his Fourth Amendment false arrest and excessive force claims against Detective Fuller arising from the October 31 detention; his civil rights conspiracy claim against Sergeant Long and Detective Fuller arising from the May 12 house visit and October 31 detention respectively; his state law civil trespass claim against Sergeants Long and Bedrossian arising from the May 12 house visit; and, his state law assault and battery and false arrest claim against Detective Fuller arising from the October 31 detention.

**A. Son Lynch may proceed on his First Amendment retaliation claims against Detective Vernacchio and Sergeant Long for their May 12, 2023 conduct.**

Son Lynch asserts a First Amendment retaliation claim against Detective Vernacchio, Sergeant Long, Sergeant Bedrossian, Detective Fuller, Sergeant McCreight, Chief Viola, and Detective Lythgoe.[91] He alleges his corruption report the morning of May 12, 2023 is the protected speech.[92] He alleges retaliatory actions: Detective Lythgoe's disclosure of Son Lynch's "confidential corruption report" to Haverford Police Department; Sergeant Long's calls to Son Lynch at 12:10 and 12:12 PM; Detective Vernacchio's call to Son Lynch's mother at 12:15 PM; Sergeants Long and Bedrossian's visit to the Lynch property at 2:30 PM; Detective Fuller's

October 31, 2023 arrest of Son Lynch; Sergeant McCreight and Chief Viola's "attempt[] to obtain a 302 involuntary commitment without knowledge of what occurred in the courtroom" on October 31, 2023; Sergeant McCreight's "denial of counsel" and "denial of medical treatment during [Son Lynch]'s detention" on October 31, 2023; and, "Haverford Township block[ing Son Lynch] from official government social media accounts beginning October 25, 2023."[93]

The state actors counter: 1) Sergeant Long's calls and the visit by Sergeants Long and Bedrossian reflect routine police activity and do not constitute action sufficient to deter a person of ordinary firmness; 2) Detective Fuller's October 31, 2023 arrest arises from courtroom events; 3) Son Lynch pleads no facts showing Sergeant McCreight or Chief Viola undertook or caused a 302 commitment or otherwise engaged in retaliatory conduct, and allegations regarding denial of counsel or medical treatment do not support a First Amendment claim; and, 4) any claim based on the Township's alleged social media blocking is time barred.[94] They argue Son Lynch does not plead facts showing his May 12, 2023 report served as a substantial or motivating factor for any of the alleged conduct.[95] Detective Lythgoe argues Son Lynch does not plausibly allege retaliatory conduct because sharing the report with the Haverford Police Department reflects routine investigative activity not retaliation.[96] He contends a reasonable person would expect such disclosure as part of an investigation so it cannot support a First Amendment retaliation claim.[97]

Son Lynch must allege 1) "he engaged in constitutionally protected conduct;" 2) a state actor "engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights;" and 3) a "causal link [existed] between the constitutionally protected conduct and retaliatory action."[98] To establish causation, Son Lynch must sufficiently plead facts allowing us to plausibly infer his "constitutionally protected conduct was a substantial or motivating factor for the retaliatory conduct."[99] "This can be done through 'evidence of: (1) an

12

unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'"[100] Our Court of Appeals instructs we "must be diligent in enforcing these causation requirements" so a state actor is not "chilled from taking action that he deemed appropriate and, in fact, was appropriate."[101]

We previously dismissed Son Lynch's First Amendment retaliation claim against Detective Lythgoe and Sergeant Bedrossian instructing him to plead sufficient facts allowing us to plausibly infer retaliatory action sufficient to deter a person of ordinary firmness and causation.[102] Son Lynch pleads no new facts as to Detective Lythgoe's involvement.[103] The only new facts Son Lynch pleads as to Sergeant Bedrossian's involvement are: 1) "[u]pon information and belief, [Sergeant] Long communicated [Son Lynch]'s corruption report and subsequent call to other [Township police] officers, including . . . [Sergeant] Bedrossian;" 2) Sergeants Long and Bedrossian "dispatched a Mental Health Mobile Crisis Response to 501 Mill Road" which "required a referral communication from" Haverford Police Department and "[u]pon information and belief, this referral was initiated by [Sergeant] Long or a supervising [Township police] officer;" and, 3) Son Lynch "commanded [Sergeants] Long and Bedrossian to leave the property" and the Sergeants "remained on the property for approximately ten minutes before departing."[104]

Son Lynch again only alleges Detective Lythgoe's disclosure of his report to the Haverford Police Department. A reasonable person reporting suspected misconduct would expect a detective to investigate and communicate with the officers identified in the report. Such conduct does not plausibly allege facts allowing us to plausibly infer retaliatory action sufficient to deter a person of ordinary firmness.

Son Lynch's new allegations against Sergeant Bedrossian remain conclusory and based "upon information and belief."[105] He does not plead facts allowing us to plausibly infer Sergeant Bedrossian knew of Son Lynch's protected conduct or acted with retaliatory intent. Sergeant Bedrossian's pleaded conduct—participating in a dispatch response, accompanying mental health professionals, remaining outside the Lynch house, and leaving after ten minutes—reflects routine police activity. Son Lynch does not allege Sergeant Bedrossian made a statement or directed conduct at him suggesting retaliation. The pleaded conduct would not deter a person of ordinary firmness from engaging in protected speech. Son Lynch does not cure the deficiencies despite our earlier detailed instruction. We dismiss Son Lynch's First Amendment retaliation claims against Detective Lythgoe and Sergeant Bedrossian with prejudice.

Son Lynch also does not plead facts allowing us to plausibly infer some causation between the May 12 protected speech and the October 31, 2023 arrest, alleged attempt to obtain a 302 involuntary commitment, or conditions of detention. There is no "unusually suggestive temporal proximity." The alleged retaliatory acts occurred more than five months after his May 12, 2023 report.[106] Son Lynch does not describe a pattern of antagonism bridging this gap or facts supporting an inference the May 12, 2023 report served as a "substantial or motivating factor" in Detective Fuller's arrest, Sergeant McCreight's alleged conduct, or Chief Viola's involvement on October 31, 2023. We dismiss Son Lynch's First Amendment retaliation claims against Detective Fuller, Sergeant McCreight, and Chief Viola with prejudice.

Son Lynch may proceed on his First Amendment retaliation claim against Detective Vernacchio relating to the May 12, 2023 phone call to Son Lynch's mother threatening arrest and his First Amendment relation claim against Sergeant Long relating to the two May 12, 2023 phone calls to Son Lynch and May 12, 2023 house visit. Son Lynch pleads sufficient facts at this stage

allowing us to plausibly infer Detective Vernacchio's and Sergeant Long's alleged calls and in-person visit could constitute retaliatory action sufficient to deter a person of ordinary firmness.

**B.  We dismiss Father Lynch's First Amendment retaliation claim with prejudice.**

Father Lynch asserts a First Amendment retaliation claim against Code Director Celia, Township Manager Burman, Sergeant McCreight, and Chief Viola.[107] Father Lynch's alleged protected speech is Son Lynch's May 12, 2023 corruption report and Father Lynch "display[ing] signs criticizing [Haverford Police Department] on his property" several months later on October 1, 2023.[108] The alleged retaliatory actions are: code violations "between May 12 and July 11, 2023;" Code Director Celia "enter[ing] the property on multiple dates;" Manager Burman "threaten[ing] imprisonment of not more than 90 days;" and, Township police "officers specifically referenc[ing] the sign and Facebook comments during an October 17, 2023 visit."[109] Code Director Celia visited the Lynch property on June 19 or 20, 2023, June 27, 2023, and July 5, 2023.[110] Sergeant McCreight visited the Lynch property on July 2, 2025.[111] Township Manager Burman "threatened imprisonment" on July 5, 2025 when Code Director Celia delivered a "Notice of Violation to the Property" signed by Township Manager Burman to the Lynches.[112]

The state actors argue the alleged retaliatory conduct is plainly barred by the statute of limitations and Father Lynch fails to allege facts allowing us to plausibly infer a First Amendment retaliation claim.[113]

Federal claims brought under section 1983 are governed by Pennsylvania's two-year statute of limitations for personal injury actions.[114] "[A] cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury."[115] "In the First Amendment retaliation context, individual discrete acts 'g[ive] rise to a cause of action at the time [they] occur[].'"[116]

We agree with the state actors Father Lynch's First Amendment retaliation claim is time barred to the extent it rests on Code Director Celia's visits in June 2023 and the Township police officers' October 17, 2023 visit. Father Lynch raised this claim for the first time on February 19, 2026.[117] We granted the Lynches leave to amend but amendment does not revive claims already barred by the statute of limitations.[118] "An amendment to a pleading relates back to the to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[119] "Consolidation of suits, however, does not merge separate suits together and is only a matter of convenience and economy in administration."[120] So "an amendment to a pleading can only relate back to the initial pleading in the individual suit rather than the initial pleading of another suit in the consolidated matter."[121] Code Director Celia's visits in June 2023 relate back to the Lynches' July 2, 2023 Complaint and the October 17, 2023 visit relates back to the Lynches' October 31, 2023 Complaint.[122] The claims based on this conduct are time barred.

We also agree with the state actors Father Lynch does not plausibly plead facts allowing us to plausibly infer a First Amendment retaliation claim based on Sergeant McCreight's visit to the Lynch property on July 2, 2023 or Township Manager Burman's "threatened imprisonment" in the code violation on July 5, 2023. The alleged protected speech on which Father Lynch relies is Son Lynch's May 12, 2023 report.[123] "[L]itigants may not assert the rights of others to obtain relief from injury for themselves."[124] An exception exists "when (1) the third party's enjoyment of the right in question is 'inextricably bound up with the activity the litigant wishes to pursue,' and (2) the third party is unable to assert his or her own right."[125] Father Lynch pleads no facts allowing us to apply this exception.

But even assuming Father Lynch could proceed based on this asserted protected conduct, Father Lynch does not plead facts allowing us to plausibly infer causation. He pleads no facts allowing us to plausibly infer "unusually suggestive" temporal proximity.[126] The alleged retaliatory acts occurred nearly two months after the asserted protected conduct. Father Lynch does not describe a pattern of antagonism or facts supporting a plausible inference Son Lynch's report of alleged corruption involving Chief Viola's compensation, police officers' aggressive behavior, and failures by the police department to address crime served as a "substantial or motivating factor" in Sergeant McCreight's visit to the Lynch property to discuss the code violations or Township Manager Burman's July 5, 2023 signed code violation.[127] Conclusory assertions alone do not suffice.

We previously instructed the Lynches on multiple occasions to plead facts and not conclusions supporting causation.[128] They again cannot so do. Further amendment would be futile. We dismiss Father Lynch's First Amendment retaliation claim with prejudice.[129]

### C. Son Lynch may proceed on his Fourth Amendment false arrest and excessive force claims arising from the October 31, 2023 detention.

Son Lynch asserts a Fourth Amendment false arrest and a Fourth Amendment excessive force claim against Detective Fuller arising from the October 31, 2023 incident at the Magisterial District court.[130] Detective Fuller argues he is entitled to qualified immunity based on probable cause.[131]

We disagree with Detective Fuller at this early stage. Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[132] Our Court of Appeals "caution[s], however, that it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast

majority of cases."[133] Viewing Son Lynch's allegations in the light most favorable to him, we decline to dismiss the false arrest and excessive force claims against Detective Fuller at this time.

Son Lynch may proceed on his Fourth Amendment false arrest and excessive force claims against Detective Fuller arising from the October 31, 2023 arrest.

### D. Son Lynch may proceed on his civil rights conspiracy claim against Detective Fuller and Sergeant Long.

Father and Son Lynch again try to plead a civil rights conspiracy claim under section 1983 against Chief Viola, Detective Fuller, Township Manager Burman, Sergeant McCreight, Sergeant Long, and Sergeant Bedrossian.[134] The Lynches allege the state actors "took a series of actions against [them] involving communications across [Haverford Police Department], Code Enforcement, and Township Management."[135] The state actors "acknowledge[ed] cross-department directives" through Code Director Celia's statements "[t]he police sent me here" and "Dave made me do it;" Chief Viola's statement "[o]k well, that's all we wanted to fucking do is finally lock him up;" "[Chief] Viola and [Detective] Fuller both characterize[ing Son Lynch]'s speech as 'threatening;'" "[c]ode enforcement and [Haverford Police Department] all converg[ing] at the October 31, 2023 hearing;" and, "[a]ll code violations were concentrated within the 60-day criminal complaint window."[136] "The May 12 calls and home visit," "[e]ach code violation," "[t]he October 31 arrest," and "the blocking of [Son Lynch] from official social media accounts" were all "taken pursuant to these cross-departmental communications.[137]

The state actors counter the Lynches do not plead specific facts allowing us to plausibly infer a state actor reached an agreement or understanding with anyone to violate the Lynches' constitutional rights.[138] They contend the Lynches' consolidated allegations describe, at most, parallel or routine interactions among officials and not a coordinated plan or conspiracy.[139]

18

To state a claim for a conspiracy to violate federal civil rights, Father and Son Lynch must allege "'(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States,' with the added gloss under [section] 1983 that the conspirators act under the color of state law."[140] But a civil rights conspiracy claim cannot survive without an underlying federal constitutional violation.[141]

Father Lynch does not plead a standalone constitutional violation under federal civil rights. We dismiss his civil rights conspiracy claim with prejudice.

Son Lynch does not plead a standalone constitutional violation under federal civil rights against Chief Viola, Township Manager Burman, Sergeant McCreight, or Sergeant Bedrossian. We dismiss his civil rights conspiracy claim against Chief Viola, Township Manager Burman, Sergeant McCreight, and Sergeant Bedrossian with prejudice.

Son Lynch may proceed on his civil rights conspiracy claim against Detective Fuller arising from his October 31, 2023 arrest and Sergeant Long arising from the May 12, 2023 house visit.

**E. We dismiss the Lynches' municipal liability claim with prejudice.**

The Lynches assert a municipal liability claim under section 1983 against Haverford Township.[142] They again try to plead facts allowing us to plausibly infer the Township Board of Commissioners "designated the Chief of Police as solely responsible to the citizens of Haverford Township to provide police service" and granted him "absolute command authority as Chief Executive and Commanding Officer of the Department."[143] They allege Chief Viola "directed [the mental health personnel] visits to 501 Mill Road" and stated "[o]k well, that's all we wanted to fucking do is finally lock him up," Code Director Celia stated "[t]he police sent me here" and "I

19

am aware that Haverford Township Police Department sent me here," and Township Manager Burman "directed [Code Director] Celia to sign and deliver the violation."[144] They further allege Chief Viola "did not discipline any officer," "[n]o officer was disciplined for the conduct described herein," the Township "defended the code violations through trial," and Code Director Celia "admitted police directed the enforcement."[145]

The Township argues the Lynches again fail to plead facts identifying a municipal policy, practice, or custom, and instead rely on conclusory assertions about Chief Viola's authority and statements by Township officials.[146]

A municipality may be held liable under federal civil rights law only when its official policy or customs caused the alleged constitutional violation.[147] But a municipality "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [section] 1983 on a *respondeat superior* theory."[148] Liability against the Township extends only to its own conduct; it cannot be vicariously liable for the conduct of its employees.[149]

We previously explained to Father and Son Lynch they must "specify what exactly that custom or policy was."[150] They must "point to an official proclamation, policy, or edict by a decisionmaker possessing the final authority to establish municipal policy on the relevant subject."[151] A municipal policy under section 1983 is a "statement, ordinance, regulation, or decision officially adopted and promulgated by" the Township's officers.[152] A custom enacted by the Township may also lead to liability if it is "so well-settled and permanent as to virtually constitute law."[153] "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy."[154] "Vague assertions" of a policy or custom are not sufficient

20

to impose liability.[155] "Without an underlying constitutional violation, there can be no *Monell* claim."[156]

Father Lynch does not plead a standalone constitutional violation under federal civil rights. We dismiss his municipal liability claim with prejudice.

Son Lynch likewise does not plead facts allowing us to plausibly infer a municipal policy or custom caused a constitutional violation. He does not identify an official proclamation, policy, or edict adopted by a final policymaker. Our Court of Appeals examined policymaking authority in a Second Class township sixteen years ago in *Santiago v. Warminster Township* and concluded "as a matter of Pennsylvania state law, a township [p]olice [c]hief is not a final policymaker."[157] This reasoning applies with equal force to First Class townships, like Haverford Township. Pennsylvania law vests authority over the "designat[ion]" of the police chief and "supervision of police" with the board of commissioners.[158] Allegations Chief Viola exercised "absolute command authority," directed enforcement activity, or failed to discipline officers do not establish final policymaking authority. Allegations regarding Township Manager Burman and Code Director Celia likewise do not identify conduct by a final policymaker. "Simply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy."[159]

Son Lynch also does not plead facts allowing us to plausibly infer a pattern of similar conduct sufficient to establish a custom. His allegations describe a single course of conduct arising from one prolonged dispute. They do not plausibly allege a practice so widespread, permanent, and well settled as to constitute a custom. Son Lynch is trying to plead a section 1983 claim against the Township seeking to hold it liable for the alleged unconstitutional conduct of its Township

21

staff and officers. The Township cannot as a matter of law be liable on a *respondeat superior* theory.[160]

We dismiss Son Lynch's municipal liability claim with prejudice.

### F.  We dismiss Father Lynch's state law malicious prosecution claim with prejudice.

Father Lynch attempts to plead a state law malicious prosecution claim against Chief Viola, Township Manager Burman, and Code Director Celia based on the Township proceeding with the October 31, 2023 landscaping code violation "terminat[ing] in his favor with a not-guilty verdict."[161] Chief Viola, Township Manager Burman, and Code Director Celia argue Father Lynch does not plead a claim because the code enforcement actions underlying the proceedings rested on probable cause and a legitimate enforcement purpose, not a malicious motive.[162] We agree with the Township officials.

Malicious prosecution under Pennsylvania law requires Father Lynch plead: 1) "the institution of proceedings against the plaintiff without probable cause and with malice" and 2) "the proceedings were terminated in favor of [him]."[163] "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose."[164]

Father Lynch can only offer conclusory allegations about Chief Viola: he "directed" or "communicated" regarding the enforcement actions "upon information and belief."[165] These conclusions do not support a plausible inference Chief Viola "instituted" the code enforcement proceedings against Father Lynch "with malice." "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[166] Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[167] Nor must we accept "bald assertions" lacking factual support.[168]

22

The pleadings as to Township Manager Burman and Code Director Celia likewise do not allow us to plausibly infer they instituted landscape code enforcement proceedings "with malice." Father Lynch alleges the October 31 proceedings followed Son Lynch's May 12, 2023 report, Code Director Celia made statements such as "the police sent me here," "Dave made me do it," and "I do not need a legal basis," and Township Manager Burman's reference to potential penalties under the ordinance.[169]

These allegations describe the timing and involvement in enforcement activity. Father Lynch again does not plead facts allowing us to plausibly infer Township Manager Burman and Code Director Celia acted with ill will, initiated the proceedings despite not believing in their propriety, or use for an extraneous improper purpose. Allegations there were no violations issued before May 12, 2023 and Google Street View reflecting similar conditions on the Lynch property at earlier times at most suggest inconsistency in enforcement, not malice.[170]

We dismiss Father Lynch's malicious prosecution claim with prejudice.

**G. Son Lynch may proceed on his state law civil trespass claim against Sergeants Long and Bedrossian for their visit to his home on May 12, 2023.**

Father and Son Lynch again try to plead a civil trespass claim under Pennsylvania law against Sergeants Long and Bedrossian arising from their May 12, 2023 visit to the Lynch property.[171] The Lynches also plead a state law civil trespass claim against Code Director Celia arising from his June 19 or 20, 2023, June 27, 2023, and July 5, 2025 visits to the Lynch property.[172] The state actors counter Code Director Celia's June 2023 visits are barred by the statute of limitations and the May 12, 2023 and July 5, 2023 visits are otherwise barred by the Pennsylvania Subdivision Tort Claims Act.[173] They contend Sergeants Long and Bedrossian and Code Director Celia acted within the scope of their duties and engaged in lawful conduct so their presence on the property cannot support a trespass claim.[174]

An individual "is liable for trespass under Pennsylvania law when they 'intentionally ente[r] land in the possession of another without privilege to do so. . .'"[175] The statute of limitations for a trespass claim law is two years.[176] Code Director Celia's June 2023 visits relate back to the Lynches' July 2, 2025 Complaint and are time barred.[177]

The Pennsylvania General Assembly through the Political Subdivision Tort Claims Act provides "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."[178] This official immunity also extends to local officials if they "caused the injury while acting within the scope of his or her office or duties."[179] A local official may claim official immunity by claiming their alleged tortious action "was authorized or required by law, or that [they] in good faith reasonably believed the conduct was authorized or required by law."[180] An exception exists where the local official's action "constituted a crime, actual fraud, actual malice or willful misconduct."[181] "Willful misconduct has the same meaning as the term 'intentional tort.'"[182]

The Lynches' theory as to the July 5, 2023 visit rests on the premise Code Director Celia committed a trespass by entering Father Lynch's property after being denied permission to deliver the violation notice—Code Director Celia "entered 501 Mill Road after being denied permission" to deliver "the draft created by [Township Manager] Burman."[183] The Lynches also allege Code Director Celia said "I don't need a legal basis" and took photographs of the Lynch property."[184]

But the Haverford Township Code expressly grants "[t]he Township Manager or *Code Enforcement* . . . the power to enter at any time upon any premises, land, buildings, structures or parts thereof which the Township Manager or *Code Enforcement* suspects may constitute a nuisance in fact or a menace to health or a threat to public safety for the purpose of examining, inspecting, correcting or abating" such nuisance.[185] The Code further directs "the Township

Manager or Code Enforcement" to "notify, in writing, the owner or occupier" of such violation and if notice "cannot be given then a copy of said notice shall be posted on the premises."[186] The Code also permits the Township Manager or Code Enforcement to "deliver or have delivered a written order of abatement."[187]

Code Director Celia's alleged entry onto the Lynch property to deliver the notice falls squarely within conduct "authorized or required by law" or at minimum conduct he "in good faith reasonably believed" to be authorized. The Lynches do not plead entry into the home, damage to property, or conduct suggesting a desire to invade the property without privilege.[188] Allegations Code Director Celia stated "I do not need a legal basis," responded "[s]hut up," and took photographs do not rise to "willful misconduct." We dismiss the Lynches' civil trespass claim against Code Director Celia with prejudice.

We also cannot look past Father Lynch admission during our pretrial hearing Sergeants Long and Bedrossian did not trespass onto his property.[189] We are not "required to credit factual allegations contradicted by . . . matters of public record of which we may take judicial notice."[190] Son Lynch's present attempts to avoid his father's candor including "[s]tatements made during a pretrial conference, particularly when the speaker is not the drafter of the complaint, cannot override the Complaint's well-pleaded factual allegations" and Father Lynch attended the "hearing without the guidance of the person who drafted the Complaint" are unpersuasive.[191]

We do not so cavalierly dismiss Father Lynch after listening to his arguments and responses to our questions when Son Lynch chose to claim asylum rather than appear at a hearing scheduled at his convenience. Father Lynch is an adult, a named plaintiff, and a signatory to each allegation. He alleges his presence during the May 12, 2023 events at his home. He appeared at the hearing and addressed those events directly in response to our specific questions. Father and Son Lynch

25

cannot avoid the consequences of Father Lynch's candid judicial admissions by recasting them as uninformed or mistaken. A litigant must plead claims consistent with the facts he knows and swears to under oath to this Court. We decline to credit these new allegations contradicting Father Lynch's express admission. We dismiss Father Lynch's civil trespass claim against Sergeants Long and Bedrossian with prejudice based on what he told us in Court.

Son Lynch may have a different recollection than his father; he may proceed on his state law civil trespass claim against Sergeants Long and Bedrossian. At this stage we construe the pleadings in the light most favorable to Son Lynch. He alleges Sergeants Long and Bedrossian remained on the property on May 12, 2023 after he directed them to leave which plausibly alleges entry without privilege. He will need to explain the inconsistency with his father's admission during discovery.

### H. We dismiss the Lynches' intentional infliction of emotional distress claims with prejudice.

The Lynches again try to plead a state law intentional infliction of emotional distress claim against "all individual defendants."[192] Father and Son Lynch proceed to plead a range of alleged actions attributed to multiple state actors.[193] We liberally construe Father Lynch's pro se claim as: against Township Manager Burman for "threaten[ing] 90 days' imprisonment for landscaping activities found not guilty" and against Code Director Celia for "enter[ing] [Lynches'] property repeatedly after being denied permission" and "respond[ing] '[s]hut up' when commanded to leave."[194] Father Lynch alleges he "suffered a documented 15-pound weight loss," "attended medical visits," and other unpleaded conduct rendered him "temporarily mute and unable to speak during the May 12, 2023 encounter."[195]

We liberally construe Son Lynch's pro se emotional distress claims as: against Chief Viola for stating "[o]k well, that's all we wanted to fucking do is finally lock him up," stating Son Lynch

26

"was 'mentally ill' in Judge Duerr's chambers," "urg[ing] a 302 involuntary commitment," and "urg[ing] a guilty verdict;" against Detective Fuller for "physically restrain[ing], "punch[ing]," and "tackl[ing]" Son Lynch; against Sergeant McCreight for "urg[ing] a 302 involuntary commitment;" against Code Director Celia for "enter[ing the Lynches'] property repeatedly after being denied permission" and "respond[ing] '[s]hut up' when commanded to leave;" and Detective Lythgoe "disclos[ing Son Lynch's] confidential corruption report to the subjects of that report."[196] Son Lynch alleges he "suffered neck and lumbar injuries," "suffered concussion symptoms," "was bed-ridden for more than one month," incurred medical expenses," "suffered severe quality of life deficiencies," and "obtained asylum protections arising from the events described in this complaint."[197]

The Township officials contend the Lynches do not plead the elements of an intentional infliction of emotional distress claim because the alleged conduct does not rise to the level of "extreme and outrageous" and they do not allege severe emotional distress supported by competent medical evidence.[198] They further argue the claims fail because the Lynches do not plead facts allowing us to plausibly infer willful misconduct required to overcome the state actors' official immunity.[199] Detective Lythgoe likewise argues his alleged his alleged conduct of sharing Son Lynch's report with the Haverford Police Department is neither "extreme and outrageous" nor intended to cause severe emotional distress.[200] We agree with the state actors.

Father and Son Lynch must plead four elements to state a claim for intentional infliction of emotional distress under Pennsylvania law: "(1) [d]efendant engaged in 'extreme and outrageous' conduct, (2) the conduct was 'intentional or reckless,' (3) the conduct caused emotional distress, and (4) the distress was 'severe.'"[201] "The conduct must be 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community.'"[202] "A complaint must also allege that the plaintiff suffered physical harm as a result of the conduct."[203] "Claims of intentional infliction of emotional distress rarely succeed because of the high standard of proof."[204]

The Lynches do not plead facts allowing us to plausibly infer they suffered emotional distress, let alone the "severe" emotional distress required under Pennsylvania law. Father Lynch does not allege any emotional distress. Son Lynch's references to "severe quality of life deficiencies" and "asylum protections" do not plausibly allege severe emotional distress.[205] Nor do the Lynches allege facts allowing us to plausibly infer a causal connection between conduct of an individual Township official and a particular harm.

We dismiss the intentional infliction of emotional distress claims with prejudice.

### I.  Son Lynch may proceed on his state law assault and battery and false arrest claims against Detective Fuller arising from the October 31, 2023 detention.

Son Lynch also pleads assault and battery and false arrest state law claims against Detective Fuller arising from his October 31, 2023 arrest.[206] Detective Fuller does not meaningfully challenge these claims.[207] Son Lynch may proceed on his state law assault and battery and false arrest claims against Detective Fuller.

### III. Conclusion

Father and Son Lynch are now in the third version of pleading what happened with Haverford Township officials and County Detective Lythgoe on a few encounters from late morning on May 12, 2023 to an arrest outside a courtroom on October 31, 2023. The Lynches overplead their claims trying to create some form of overarching conspiracy to harm them.

Son Lynch pleaded facts allowing us to plausibly infer claims for First Amendment retaliation against Detective Vernacchio and Sergeant Long, Fourth Amendment false arrest and excessive force and state law assault and battery and false arrest against Detective Fuller, a civil

rights conspiracy against Sergeant Long and Detective Fuller, and state law civil trespass against Sergeants Long and Bedrossian.

We dismiss all remaining claims with prejudice. We now proceed to discovery to test the remaining allegations suitable for trial later this year.

---

[1] ECF 44 ¶¶ 43–64.

[2] *Id.* ¶ 43.

[3] *Id.* ¶ 44.

[4] *Id.* ¶ 47.

[5] *Id.* ¶ 48.

[6] *Id.* ¶¶ 52–53. Son Lynch asserts "[u]pon information and belief, [Detective] Fuller or another officer communicated the encounter to [Sergeant] Long and [Detective] Vernacchio." *Id.* ¶ 58.

[7] *Id.* ¶¶ 60–66.

[8] *Id.* ¶ 67.

[9] *Id.* ¶ 69.

[10] *Id.* ¶ 70.

[11] *Id.* ¶¶ 71–73. Son Lynch alleges "[u]pon information and belief, [Detective] Vernacchio was briefed by another [Haverford] officer regarding [Son Lynch]'s corruption report and the lobby encounter." *Id.* ¶ 76.

[12] *Id.* ¶¶ 78–79.

[13] *Id.* ¶ 80. Son Lynch alleges "[u]pon information and belief, [Sergeant] Long communicated [Son Lynch]'s corruption report and subsequent call to other [Haverford] officers, including Detective Vernacchio and Sergeant Bedrossian." *Id.* ¶ 81.

[14] *Id.* ¶ 82.

[15] *Id.* ¶¶ 83, 85, 99. Son Lynch alleges "[t]he deployment of [the Mobile Crisis for Law Enforcement] to 501 Mill Road required a referral communication from" Haverford Police Department and "[u]pon information and belief, this referral was initiated by [Sergeant] Long or a supervising [police] officer." *Id.* ¶¶ 86, 88.

[16] *Id.* ¶ 92.

[17] *Id.* ¶¶ 93–34.

[18] *Id.* ¶¶ 95–96.

[19] *Id.* ¶ 103

[20] *Id.* ¶ 97.

[21] *Id.* ¶ 98.

[22] *Id.* ¶¶ 99–101, 104.

[23] *Id.* ¶ 109.

[24] *Id.* ¶ 108.

[25] *Id.* ¶¶ 91, 106

[26] *Id.* ¶ 110.

[27] *Id.* ¶¶ 111–19.

[28] *Id.* ¶ 115.

[29] *Id.* ¶ 130–31.

[30] *Id.* ¶ 132.

[31] *Id.* ¶ 134.

[32] *Id.* ¶¶ 135–42. Son Lynch asserts "[u]pon information and belief, the directive to send [Code Director] Celia originated from or through Chief Viola." *Id.* ¶ 143.

[33] *Id.* ¶¶ 145, 150–51.

[34] *Id.* ¶¶ 152–54.

[35] *Id.* ¶¶ 155–56.

[36] *Id.* ¶¶ 160–61.

[37] *Id.* ¶¶ 162–63, 166.

[38] *Id.* ¶¶ 167–68.

[39] *Id.* ¶ 172.

[40] *Id.* ¶¶ 173-74. Son Lynch asserts "[u]pon information and belief, Burman communicated with Viola and/or Celia regarding the enforcement actions against 501 Mill Road." *Id.* ¶ 170.

41 *Id.* ¶ 175.

42 *Id.* ¶¶ 176-77.

43 *Id.* ¶¶ 178, 240.

44 ¶¶ 181-82.

45 *Id.* ¶¶ 183-84.

46 *Id.* ¶¶ 185-86.

47 *Id.* ¶ 187.

48 *Id.* ¶¶ 189-90.

49 *Id.* ¶ 191.

50 *Id.* ¶ 192. Son Lynch asserts "[u]pon information and belief, the directive originated from Viola or an officer acting on Viola's instruction." *Id.* ¶ 193.

51 *Id.* ¶ 240.

52 *Id.* ¶ 244.

53 *Id.* ¶ 247.

54 *Id.* ¶ 248.

55 *Id.* ¶¶ 258-59, 265.

56 *Id.* ¶¶ 260-63, 266.

57 *Id.* ¶ 264.

58 *Id.* ¶¶ 250–52, 269. Son Lynch presumably would have known Detective Fuller from the May 12, 2023 encounter at the police station.

59 *Id.* ¶¶ 270–74.

60 *Id.* ¶¶ 275.

61 *Id.* ¶¶ 276, 284, 287, 291.

62 *Id.* ¶¶ 293, 303–04.

63 *Id.* ¶¶ 305, 307–08.

64 *Id.* ¶¶ 315–17.

31

[65] *Id.* ¶¶ 318–19.

[66] *Id.* ¶ 328.

[67] *Id.* ¶¶ 329–30.

[68] *Id.* ¶ 342.

[69] *Id.* ¶¶ 331–32, 340.

[70] *Id.* ¶ 333.

[71] *Id.* ¶¶ 337, 346.

[72] *Id.* ¶ 347.

[73] *Id.* ¶¶ 348, 356–60. Son Lynch went to Bryn Mawr Hospital for treatment upon release on bail and medical staff removed a neck brace but declined to conduct imaging or provide treatment after learning of police involvement. *Id.* ¶¶ 362–67. Son Lynch then went to Lankenau Hospital the same evening, where the medical professionals denied treatment after he disclosed police involvement. *Id.* ¶¶ 368–69.

[74] *Id.* ¶ 361.

[75] *Id.* ¶ 351. "Prosecutors [also] requested $100,000 cash bail" and "[t]he bail conditions prohibited Plaintiff from contacting elected officials." *Id.* ¶¶ 349–50. Son Lynch asserts "[u]pon information and belief, [Haverford] officers communicated with the prosecuting authority regarding the desired bail conditions." *Id.* ¶ 352.

[76] ECFs 28, 33.

[77] ECFs 29, 31.

[78] ECFs 35, 39.

[79] ECF 37 ¶ 1.c.i.

[80] ECF 38.

[81] ECF 44. Congress through section 1983 provides a remedy for when state actors violate our constitutional rights but section 1983 is not a source of substantive rights; it is a vehicle to vindicate federal rights "elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Congress in section 1983 provides, in relevant part: "Every person who, under color of any statute . . . of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. To state a civil rights claim, Father and Son Lynch must allege (1) a person acting under color of state law committed the complained-

of conduct; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

[82] ECF 44 ¶¶ 399–451.

[83] *Id.* ¶¶ 452–63.

[84] *Id.* ¶¶ 464–80.

[85] *Id.* ¶¶ 481–556.

[86] ECF 45.

[87] ECF 49. Detective Lythgoe also moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6).

[88] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)) (cleaned up).

[89] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

[90] *Id.* (quoting *Mala*, 704 F.3d at 245).

[91] ECF 44 ¶ 399.

[92] *Id.* ¶ 400.

[93] *Id.* ¶¶ 401–09.

[94] ECF 45 at 9–11.

[95] *Id.* at 11.

[96] ECF 49 at 5.

[97] *Id.*

[98] *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (cleaned up) (footnote omitted).

[99] *Conard v. Pennsylvania State Police*, No. 20-3644, 2022 WL 58543, at *2 (3d Cir. Jan. 6, 2022) (internal citation omitted).

[100] *Id.* (quoting *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016)).

[101] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[102] ECF 19 at 9.

[103] *Compare* ECF 1 at 8–10 *with* ECF 44 ¶¶ 60–68, 77–80.

[104] ECF 44 ¶¶ 81–82, 86, 88, 97–98.

[105] "We need not accept as true 'unsupported conclusions and unwarranted inferences.'" *Brandywine Vill. Assocs. v. Carlino E. Brandywine, LP*, No. 23-2457, 2024 WL 3649569, at *1 n.4 (3d Cir. Aug. 5, 2024) (quoting *Maio v. Aetna, Inc.*, 221 F.3d 472, 481 (3d Cir. 2000)).

[106] "Generally, 'temporal proximity should be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.'" *Travillion v. Harry*, No. 22-1196, 2024 WL 1285542, at *10 (M.D. Pa. Mar. 26, 2024), *aff'd sub nom. Travillion v. Wetzel*, No. 24-1763, 2025 WL 971669 (3d Cir. Apr. 1, 2025) (quoting *Diede v. City of McKeesport*, 654 F. Supp. 2d 363, 377 (W.D. Pa. 2009)); *see also Dondero v. Lower Milford Twp.*, 431 F. Supp. 3d 590, 601 (E.D. Pa. 2019), *aff'd*, 5 F.4th 355 (3d Cir. 2021) ("The passage of nine months is insufficient to show retaliatory motive."); *Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d 416, 423 (3d Cir. 2020) (days-long proximity recognized as unusually suggestive to support causation); *Thomas v. Town of Hammonton*, 351 F. 3d 108, 114 (3d Cir. 2003) (finding no causal connection for First Amendment retaliation claim where three weeks passed between protected conduct and alleged retaliatory action); *Baez v. Letizio*, No. 23-1827, 2024 WL 4680028, at *5 (E.D. Pa. Nov. 5, 2024) ([U]nusually suggestive temporal proximity . . . normally means mere hours or days between protected conduct and adverse action."); *Kostin v. Bucks Cmty. Coll. (Nursing Dep't)*, No. 21-850, 2022 WL 952729, at *11 (E.D. Pa. Mar. 30, 2022) ("Unusually suggestive temporal proximity means within a few days but no longer than a month.").

[107] ECF 44 ¶¶ 415–426.

[108] *Id.* ¶¶ 181–82, 416, 420.

[109] *Id.* ¶¶ 417–19, 421.

[110] *Id.* ¶¶ 130, 145, 150, 172.

[111] *Id.* ¶ 155.

[112] *Id.* ¶¶ 166–68, 174.

[113] ECF 45 at 12.

[114] *Lloyd v. Ocean Twp. Couns.*, 857 F. App'x 61, 64 (3d Cir. 2021) (quoting *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)) ("A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims."); *see also* 42 Pa. Cons. Stat. Ann. § 5524.

[115] *Millan v. Mun. of Harrison*, No. 24-2882, 2025 WL 2375263, at *1 (3d Cir. Aug. 15, 2025) (quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)).

[116] *Id.* (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 128–29 (3d Cir. 2006)).

[117] ECF 44.

[118] *See* ECF 38.

[119] Fed. R. Civ. P. 15(c)(1)(B).

[120] *Vann v. City of Phila.*, No. 20-1433, 2020 WL 4334904, at *2 (E.D. Pa. July 28, 2020) (internal citation omitted).

[121] *Id.* (citing *U.S. ex rel. Malloy v. Telephonics Corp.*, 68 F. App'x 270, 273 (3d Cir. 2003)).

[122] *See* No. 25-3442, ECF 1; No. 25-6195, ECF 1. We previously dismissed with prejudice Son Lynch's First Amendment retaliation claim based on these same events. *See Lynch v. Haverford Twp. et al.*, No. 25-3442, 2025 WL 2976953, *8–10 (E.D. Pa. Oct. 20, 2025); *Lynch v. Haverford Twp. et al.,* No. 25-6195, ECF 36 ¶ 1.c.ii.

[123] ECF 44 ¶ 416.

[124] *Burk v. Quinn*, No. 23-3004, 2024 WL 422666, at *8 (E.D. Pa. Feb. 2, 2024) (citing *Singleton v. Wulff*, 428 U.S. 106, 113–14 (1976); *Amato v. Wilentz*, 952 F.2d 742, 748–49 (3d Cir. 1991)).

[125] *Id.* (quoting *Singleton*, 428 U.S. at 113–14).

[126] *See supra notes* 98–101.

[127] *Id.*

[128] *See, e.g.*, ECF 19 at 7–9; ECF 37 ¶ 1.b.i.

[129] Father Lynch does not plead what retaliatory action Chief Viola took but we infer he is referring to Chief Viola's statement he "repeatedly sent [the Mobile Crisis Unit] to 501 Mill Road" sometime between May and June 2023 and Chief Viola "direct[ing]" the "enforcement actions. ECF 44 ¶¶ 113, 121. These allegations are either barred by the statute of limitations or similarly do not allow us to plausibly infer Chief Viola took retaliatory action or acted because of Son Lynch's May 12, 2023 corruption report.

[130] *Id.* ¶¶ 427–451.

[131] ECF 45 at 24–25; *see id* at 25 ("Reviewing the Affidavit of Probable Cause, establishes the grounds for the arrest of the Plaintiff on October 31, 2023 and Detective Fuller should be granted qualified immunity on any federal false arrest claim.").

[132] *James v. Cty. of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[133] *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (per curiam).

[134] ECF 44 ¶ 452.

[135] *Id.* ¶ 453.

[136] *Id.* ¶¶ 316, 454–58.

[137] *Id.* ¶¶ 460–63.

[138] ECF 45 at 12–14.

[139] *Id.*

[140] *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).

[141] *Dondero*, 431 F. Supp. 3d at 606; *see also Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 141 (3d Cir. 2017) ("There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege.").

[142] ECF 44 ¶ 464.

[143] *Id.* ¶¶ 465–66.

[144] *Id.* ¶¶ 316, 468–71, 475.

[145] *Id.* ¶¶ 472, 476–77, 479.

[146] ECF 45 at 14–15.

[147] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978).

[148] *Id.* at 691 (emphasis in original).

[149] *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal citations omitted).

[150] *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

[151] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).

[152] *Monell*, 436 U.S. at 690.

[153] *Forrest*, 930 F.3d at 105–06.

[154] *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) (quoting *Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).

[155] *Simpson v. Phila. Sheriff's Off.*, 351 F. Supp. 3d 919, 928 (E.D. Pa. Jan. 7, 2019) (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)).

[156] *City of Phila. v. Hempstead Props., LLC*, No. 23-2434, 2024 WL 1620792, at *2 (E.D. Pa. Apr. 15, 2024) (citing *Knellinger v. York Street Prop. Dev., LP*, 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014)).

[157] *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (citing 53 PA. CONS. STAT. ANN. § 66902); *see also Moore v. Lower Frederick Twp., et al.*, No. 20-5920, 2022 WL 657068, at *4 (E.D. Pa. Mar. 4, 2022) ("A police chief does not have final policy making authority in a Pennsylvania township and, as such, [the chief] cannot be a final policymaker sufficient to incur *Monell* liability.").

[158] 73 PA. CONS. STAT. ANN. §§ 4103, 4106; *see also* Haverford Township Code § 4-426 ("The Department of Police shall be headed by a Chief, who shall be responsible to the Township Manager and majority of the Board of Commissioners for the performance of the function of the Department.").

[159] *Moore*, 2022 WL 657068, at *4 (quoting *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010)).

[160] *Hightower v. City of Phila.*, 130 F.4th 352, 355–56 (3d Cir. 2025).

[161] ECF 44 ¶ 481–83.

[162] ECF 45 at 15–17.

[163] *York v. Kanan*, 298 A.3d 533, 542 (Pa. Commw. Ct. 2023) (citing *Alleyne v. Pirrone*, 180 A.3d 524, 528 n.3 (Pa. Commw. Ct. 2018)).

[164] *Gentles v. Portock*, No. 19-581, 2020 WL 3412545, at *6 (E.D. Pa. June 22, 2020) (quoting *Wagner v. Waitlevertch*, 774 A.2d 1247, 1253 (Pa. Super. Ct. 2001)).

[165] ECF 44 ¶¶ 121, 143–44, 170.

[166] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

[167] *Id.*

[168] *Grasso v. Katz*, No. 22-2896, 2023 WL 4615299, at *3 (3d Cir. July 19, 2023) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

[169] ECF 44 ¶¶ 487–92.

[170] ECF 44 ¶¶ 484–85.

[171] *Id.* ¶¶ 548–56.

[172] *Id.* ¶¶ 493–501.

[173] ECF 45 at 18.

[174] *Id.* at 19–20.

[175] *Colon v. Kinnel*, No. 21-3337, 2023 WL 1783774, at *14 (E.D. Pa. Feb. 6, 2023) (quoting *Kopka v. Bell Tel. Co. of Pa.*, 91 A.2d 232, 235 (Pa. 1952)); *see also* Restatement (Second) of Torts § 163; *Boring v. Google Inc.*, 362 F. App'x 273, 280 (3d Cir. 2010).

[176] 42 PA. CONS. STAT. ANN. § 5524(4); *see also Davis v. Wells Fargo*, 824 F.3d 333, 344 (3d Cir. 2016).

[177] "Rule 15(c) applies to state law claims brought in federal courts." *Vann v. City of Phila.*, No. 20-1433, 2020 WL 4334904, at *2 (E.D. Pa. July 28, 2020) (citing *Loudenslager v. Teeple*, 466 F.2d 249, 250 (3d Cir. 1972)).

[178] 42 PA. CONS. STAT. ANN. § 8541.

[179] *eXp Realty, LLC v. Borough of Glenolden*, No. 23-4287, 2024 WL 1806429, at *12 (E.D. Pa. Apr. 25, 2024) (citing 42 PA. CONS. STAT. ANN. § 8545; *Lawson v. City of Coatesville*, 42 F. Supp. 3d 664, 683 (E.D. Pa. 2014)).

[180] 42 PA. CONS. STAT. ANN. § 8546(2).

[181] *Id.* § 8550.

[182] *eXp Realty, LLC*, 2024 WL 1806429, at *12. Willful misconduct "is described as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.'" *Id.* (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 287 (3d Cir. 2006) (internal citations omitted).

[183] ECF 44 ¶¶ 172, 174.

[184] *Id.* ¶¶ 498, 500.

[185] Haverford Township Code § 119-4 (emphasis added).

[186] *See* Haverford Township Code § 119-1. ("Whenever the Township Manager or Code Enforcement, upon information or inspection, determines that the construction, alteration, repair, lack of repair, use, occupancy, care or maintenance of any premises, land, buildings, structures or any part of premises, land, buildings or structures constitutes a nuisance in fact or a menace to health or a threat to public safety, the Township Manager or Code Enforcement shall notify, in writing, the owner or occupier of said premises, land, buildings, structures or part thereof of the determination. If notice, as aforesaid, cannot be given then a copy of said notice shall be posted on the premises.").

[187] *See* Haverford Township Code § 119-2. ("At the time of the notification of determination aforesaid or at some later time, the Township Manager or Code Enforcement may also deliver or have delivered a written order of abatement directed to the owner or occupier aforesaid requiring an abatement of the condition described within such time as may be specified in the order of abatement. Said order of abatement may provide for removal, replacement, repair, construction,

installation or any other relief deemed appropriate by the Township Manager or Code Enforcement.").

[188] *See, e.g., Stone v. Martin*, No. 1270 C.D. 2018, 2020 WL 1934383, at \*3 (Pa. Commw. Ct. Apr. 22, 2020) ("[N]o facts are pled stating or even suggesting that he entered any building on the property, searched anything other than looking around the grounds for a person to serve, or seized or damaged any property. Even accepting as true all well-pled, material, and relevant facts alleged in the complaint and every inference deducible therefrom, there is no indication from those allegations that the Deputy Sheriff did anything other than serve process, as he was statutorily authorized to do.").

[189] ECF 37 ¶ 1.c.i.

[190] *Mathews v. Abington Heights Sch. Dist.*, No. 22-959, 2025 WL 778063, at \*5 (M.D. Pa. Mar. 11, 2025); *see also id.* at \*7 n.15 ("Although the original and first amended complaints have been superseded by subsequent pleadings and rendered of no legal effect, we may take judicial notice of factual admissions in the superseded pleadings, which are part of the public record.") (citing *Rowbottom v. City of Harrisburg*, No. 19-657, 2020 WL 6866262, at \*1 n.1 (M. D Pa. Jan. 23, 2020) (taking judicial notice of factual admissions in superseded pleadings); *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018) ("We need not . . . credit factual allegations contradicted by matters of which we may take judicial notice."); *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017) ("[W]hile Plaintiffs' well-pleaded allegations must be accepted as true for purposes of this motion, the Court need not accept as true allegations that are directly contradicted by . . . matters of public record."); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008) ("Neither does the court have to accept as true anything in the complaint which contradicts facts of which the court may take judicial notice.")).

[191] ECF 48 at 5–6.

[192] ECF 44 ¶ 502.

[193] *Id.* ¶¶ 503–16.

[194] *Id.* ¶¶ 504, 514–15.

[195] *Id.* ¶¶ 524–26.

[196] *Id.* ¶¶ 503, 505–06, 509–11, 513–16.

[197] *Id.* ¶¶ 518–23.

[198] ECF 45 at 20–21.

[199] *Id.* at 21.

[200] ECF 49 at 6.

[201] *Brown v. Am. Airlines, Inc.*, 723 F. Supp. 3d 411, 423 (E.D. Pa. 2024) (quoting *Jordan v. Pennsylvania State Univ.*, 276 A.3d 751, 775 (Pa. Super. Ct. 2022)).

[202] *Id.* (quoting *Jordan*, 276 A.3d at 775).

[203] *Id.* (citing *N'Jai v. Pittsburgh Bd. Of Pub. Educ.*, 487 F. App'x 735, 737 (3d Cir. 2012)).

[204] *Gahagan v. City of Phila.*, No. 21-2523, 2022 WL 16745098, at *9 (E.D. Pa. Nov. 7, 2022) (internal citation omitted).

[205] Son Lynch must allege he suffered *severe* emotion distress resulting from each state actor's conduct. "Fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea" all indicate "severe" emotional distress. *Lane v. Cole*, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000); *see also Ferrara v. Delaware Cty.*, No. 18-5157, 2019 WL 2568117, at *4 (E.D. Pa. June 21, 2019) (finding plaintiff's assertion he suffered "anxiety, fear and mental harm" sufficient to survive motion to dismiss); *Ginsburg v. Aria Health Physician Servs.*, No. 12-1140, 2012 WL 3778110, at *1 (E.D. Pa. Aug. 31, 2012) (finding plaintiff's alleged "[post-traumatic stress disorder,] loss of sleep, anxiety and heart palpitations" sufficient to survive motion to dismiss).

[206] ECF 44 ¶¶ 527–47.

[207] *See* ECF 45 at 20 ("It's hard to even fathom the excessive force claim or assault and battery claim alleged by the Plaintiff son reaching this same degree of conduct [required for an intentional infliction of emotional distress claim] where Plaintiff was removed from the courtroom because of his continued harassment of Judge Deurr.").