**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH J. LYNCH** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO. 25-2382** |
| | : | |
| **SERGEANT T.J. LONG, SERGEANT SHANT BEDROSSIAN, DETECTIVE JOSEPH FULLER, DETECTIVE DAVID VERNACCHIO** | : | |

# MEMORANDUM

**KEARNEY, J.** **November 24, 2026**

An adult living in his parents' house visited the local police station to complain to the police chief about traffic around his parents' house. The police chief could not see him. The man became angry in the lobby, an officer came out to talk to him, and the man then left the police department while continuing to yell at the police. The officers, concerned for the man's mental health, called his mother to inform her of his conduct. Another officer who enjoyed a productive conversation with the man days earlier called him. The man yelled at the officer and hung up on him. The police sent over mental health professionals along with two officers to check on the man's mental health at his parents' home. The officers did not enter the home. The mental health professionals excused the officers.

The man then pro se sued a variety of police officers arising from this short encounter at the home almost two years later. We allowed three claims relating to this encounter to proceed into discovery. The officers now argue the man cannot adduce a genuine issue of material fact precluding judgment dismissing the man's First Amendment retaliation, civil conspiracy, and Pennsylvania trespass claims against the officers. We studied an exhaustive record. We find no genuine issue of material fact preluding judgment as a matter of law. The man adduces no evidence

allowing a reasonable jury to find the officers violated his First Amendment rights by calling his mother and visiting his parents' home for a mental health check along with mental health professionals nor did the officers trespass on his parents' property when checking on his mental health. We grant the officers' Motion for partial summary judgment dismissing the man's claims concerning the May 12, 2023 encounter.

## I. Undisputed material facts[1]

Adult Joseph J. Lynch lived in his parents' home in Haverford Township in May 2023.[2] Mr. Lynch did not like how Haverford Township policed the traffic around his parents' house.[3] Mr. Lynch visited the Haverford Township Police Department on May 12, 2023.[4] He wanted to speak with Police Chief John Viola.[5] An administrative assistant told Mr. Lynch he could not see Chief Viola without an appointment.[6] Mr. Lynch became angry and started to yell and curse from the lobby just outside the police department.[7] Several officers, including Detective Joseph Fuller, heard Mr. Lynch yelling and went into the lobby area.[8] Mr. Lynch left the Haverford Township Police Department continuing to yell.[9]

Detective David Vernacchio then called Mr. Lynch's mother, Sally Lynch.[10] Detective Vernacchio told Ms. Lynch what just happened at the Haverford Township Police Department.[11] Detective Vernacchio does not normally call the mother of an adult but felt Mrs. Lynch could speak with son about his behavior.[12] Detective Vernacchio told Ms. Lynch to tell Mr. Lynch the police would arrest him if he returned to the police department again and caused an incident.[13]

Sergeant T.J. Long also twice called Mr. Lynch although he did not see Mr. Lynch at the Police Department.[14] Sergeant Long called Mr. Lynch because he believed he had a good rapport with Mr. Lynch.[15] Mr. Lynch cursed at Sergeant Long and hung up.[16]

Sergeant Long then spoke with Deputy Chief Joseph Hagan.[17] They believed Mr. Lynch might need mental health help because of his behavior at the police department coupled with his known mental health history.[18] Sergeant Long contacted Mobile Crisis Law Enforcement.[19]

***Haverford Township police and mental health professionals check on Mr. Lynch at his parents' home.***

Sergeant Long, Sergeant Shant Bedrossian, and the mental health professionals went to Mr. Lynch's and his parents' residence a little later on May 12, 2023.[20] The residence did not have a "no trespassing" sign.[21] Sergeants Long and Bedrossian knocked on the front door.[22] Mr. Lynch's father answered.[23] Mr. Lynch then joined his father to talk to Sergeants Long and Bedrossian and the mental health professionals.[24]

Mr. Lynch recorded this May 12, 2023 encounter on his cell phone.[25] Sergeant Long told Mr. Lynch he was not there to arrest him.[26] But Mr. Lynch and Sergeant Long yelled at each other.[27] Mr. Lynch repeatedly asked Sergeants Long and Bedrossian to leave his parents' house.[28] Sergeants Long and Bedrossian stayed on the front steps of the house for approximately ten minutes.[29] Sergeants Long and Bedrossian did not enter the home.[30] Sergeant Bedrossian told Mr. Lynch they wanted to join the mental health professionals to try to calm things down.[31]

Mr. Lynch's father invited the mental health professionals into his house.[32] Sergeants Long and Bedrossian walked down to the sidewalk (away from the front door) remaining on the scene for the medical professionals' safety.[33] Sergeants Long and Bedrossian left once the mental health professionals told the Sergeants they felt safe.[34]

Sergeant Long did not talk about Mr. Lynch with Detective Fuller after May 12, 2023.[35] Sergeant Long did not tell Detective Fuller he was going to Mr. Lynch's residence on May 12, 2023.[36] Mr. Lynch and Sergeant Long did not communicate after May 12, 2023.[37]

***Mr. Lynch sues.***

Mr. Lynch and his father sued several Haverford Township officers and entities including Sergeants Long and Bedrossian, Detectives Fuller and Vernacchio, and the Delaware County Mobile Crisis for Law Enforcement on May 9, 2025.[38] Mr. Lynch and his father asserted claims of First Amendment retaliation, violations of the Fourth and Fourteenth Amendment, civil trespass, defamation, and intentional infliction of emotional distress.[39] We dismissed all claims against Detective Fuller and the Delaware County Mobile Crisis for Law Enforcement along with other persons after Mr. Lynch and his father did not timely demonstrate service.[40]

Sergeants Long and Bedrossian and Detectives Fuller and Vernacchio moved to dismiss.[41] Mr. Lynch and his father did not timely oppose. We granted their Motion to dismiss with leave for Mr. Lynch and his father to file an amended Complaint.[42]

***We consolidate Mr. Lynch's three cases.***

Mr. Lynch and his father filed two additional cases against same or similar parties in July and October 2025.[43] We held a case management conference to discuss pending motions to dismiss and consolidating claims into one action.[44] We ruled on the pending motions but again granted Mr. Lynch and his father leave to file a consolidated second amended Complaint.[45]

Mr. Lynch and his father filed a consolidated second amended Complaint on February 10, 2026.[46] We struck the consolidated second amended Complaint as not complying with Federal Rule 8 and our earlier Orders dismissing claims with prejudice.[47] We allowed Mr. Lynch and his father one last leave to file a third consolidated amended Complaint.[48]

***Mr. Lynch files a third amended Complaint.***

Mr. Lynch and his father filed a third consolidated amended Complaint.[49] The Haverford Township Officers moved to dismiss.[50]

We allowed Mr. Lynch to proceed on his claims of: 1) First Amendment retaliation against Detective Vernacchio and Sergeant Long; 2) civil rights conspiracy against Sergeant Long and Detective Fuller; and 3) state law civil trespass against Sergeants Long and Bedrossian arising from their May 12, 2023 conduct and house visit.[51] We dismissed Mr. Lynch's father from the Action with prejudice.[52] The parties proceeded into an extended discovery period.

## II. Analysis

The Haverford Township Officers timely moved for partial summary judgment on Mr. Lynch's claims arising from the May 12, 2023 events at the Lynch residence.[53] Mr. Lynch opposed.[54] We find no genuine issue of material fact. The Haverford Township Officers are entitled to judgment as a matter of law dismissing Mr. Lynch's three remaining claims against Haverford Township Officers relating to the May 12, 2023 encounter at his parents' home.

### A. We grant summary judgment dismissing Mr. Lynch's First Amendment retaliation claim against Detective Vernacchio and Sergeant Long.

Detective Vernacchio and Sergeant Long argue Mr. Lynch did not adduce evidence allowing a reasonable jury to find they engaged in a retaliatory action in checking on Mr. Lynch's mental health on May 12, 2023 let alone an action which would deter an ordinary person from exercising their constitutional rights.[55] Mr. Lynch argues he engaged in constitutionally protected conduct and Detective Vernacchio and Sergeant Long retaliated against him by visiting his house and calling his mother.[56] He also argues there is "unusually suggestive temporal proximity" to establish causation.[57] We agree with Detective Vernacchio and Sergeant Long.

Mr. Lynch must prove: 1) he engaged in constitutionally protected conduct; 2) Detective Vernacchio and Sergeant Long engaged in retaliatory action sufficient to deter an ordinary person from exercising their constitutional rights; and 3) a causal link between the constitutionally protected conduct and the retaliatory action.[58] Mr. Lynch must show his constitutionally protected

conduct was a "substantial" or "motivating factor" in the allegedly retaliatory conduct.[59] Mr. Lynch may show the causal link with evidence of either: 1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; or 2) a pattern of antagonism coupled with timing suggesting a causal link.[60] Our Court of Appeals instructs we "must be diligent in enforcing these causation requirements" so a state actor is not "chilled from taking action that he deemed appropriate and, in fact, was appropriate."[61]

**1. Mr. Lynch engaged in constitutionally protected conduct.**

We have little trouble concluding Mr. Lynch adduced evidence of engaging in constitutionally protected conduct when he went to the Haverford Township Police Department on May 12, 2023 demanding to speak to Chief Viola.[62] "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."[63] Even the use of profanity against police officers is protected.[64] Mr. Lynch asked to speak to Chief Viola about matters of public concern falling well within the First Amendment's scope of protection.[65]

**2. Detective Vernacchio and Sergeant Long did not engage in retaliatory action.**

But Mr. Lynch did not adduce evidence of a genuine issue of material fact allowing a reasonable jury to find Detective Vernacchio and Sergeant Long engaged in retaliatory action sufficient to deter an ordinary person from exercising their constitutional rights. We look to recent guidance from our Court of Appeals. It held a custodian's transfer back to a primary location did not constitute an adverse action sufficient to deter a person of ordinary firmness from exercising their constitutional rights.[66] And we then compare our Court of Appeals' analysis from ten years ago holding an incarcerated person charged with a misconduct violation which subjected him to a range of sanctions qualified as an adverse action.[67] And our colleague Chief Judge Brann found

termination of employment, launching surveys regarding an employee's performance, and extending an employee's probationary period constituted retaliatory adverse actions.[68]

The Haverford Township Officers' response to Mr. Lynch's conduct at the police station is of a materially different sort. The undisputed credible evidence is the officers visited the house with mental health professionals out of concern for Mr. Lynch's mental health well-being.[69] This type of police check on mental health after a resident is undisputedly screaming in the police station does not reach the level of retaliatory action sufficient to deter an ordinary person from exercising their constitutional rights. Nor does a phone call to Mr. Lynch's mother telling her about Mr. Lynch's behavior at the police station. We cannot find a police officer checking on a resident's mental health following disturbing conduct is an adverse action. We do not want to discourage our police officers from checking on residents' mental health after witnessing distressing conduct.

**3. Mr. Lynch did not adduce evidence of a causal link between the protected conduct and a retaliatory action.**

And no reasonable jury could find a causal link between Mr. Lynch's behavior at the Haverford Township Police Department and a wellness check by Detective Vernacchio and Sergeant Long. We are guided by Judge Bartle's finding six years ago of no causal link between a complaint of police misconduct and an arrest when the adduced evidence showed the officer arrested the subject solely to apprehend her.[70] Our Court of Appeals in a separate Action reversed summary judgment finding the adduced evidence supported conflicting inferences on motive for the retaliatory conduct.[71] The undisputed evidence shows Detective Vernacchio and Sergeant Long went to Mr. Lynch's residence solely out of concern for his well-being after his conduct in the police station.[72] Mr. Lynch did not adduce evidence showing conflicting inferences for Detective Vernacchio and Sergeant Long's home visit.

The temporal proximity between Mr. Lynch's visit to the police station, Detective Vernacchio's call to Mr. Lynch's mother, and Detective Vernacchio and Sergeant Long's house visit is close in time. But it is not unusually suggestive. Mr. Lynch did not adduce evidence to rebut Detective Vernacchio's reason for the call to his mother. Detective Vernacchio explained the nature of Mr. Lynch's behavior led Detective Vernacchio to believe his mother would be able to speak with Mr. Lynch about it.[73] The officers checked on Mr. Lynch shortly after his conduct.[74] We expect our officers to promptly address mental health episodes in their presence rather than ignore them.

Mr. Lynch similarly did not adduce evidence of a pattern of antagonism by Detective Vernacchio and Sergeant Long coupled with timing to suggest a causal link. We are guided by Judge Robreno's grant of summary judgment finding no adduced evidence of antagonistic events or interactions between the parties outside the day in question.[75] Mr. Lynch and Sergeant Long enjoyed a productive conversation before May 12, 2023 which led Sergeant Long to think he could talk to Mr. Lynch after the conduct at the police station.[76] Mr. Lynch adduces no evidence of earlier antagonism. The undisputed facts are to the contrary. We, like Judge Robreno, find no genuine issue of material fact as to the lack of antagonism.

Mr. Lynch asks us to find a police officer performing a wellness check with mental health professionals after witnessing his behavior is First Amendment retaliation. But this finding would chill actions an officer deems appropriate and is appropriate. Mr. Lynch has not adduced evidence creating a genuine issue of material fact as to whether the two Haverford Township Officers illegally retaliated against him when they checked on his mental wellness along with mental health professionals shortly after he became overly agitated and left the police station. We grant summary

judgment in favor of Detective Vernacchio and Sergeant Long on Mr. Lynch's claim of First Amendment retaliation.

**B. We grant summary judgment dismissing Mr. Lynch's civil rights conspiracy claim against Sergeant Long and Detective Fuller.**

Sergeant Long and Detective Fuller move for summary judgment on the civil conspiracy claim against them. They argue Mr. Lynch did not adduce evidence of them discussing Mr. Lynch regarding the May 12, 2023 encounters or their contact with each other until October 31, 2023.[77] The officials argue Mr. Lynch adduced no evidence from which a reasonable jury could find they conspired to deprive Mr. Lynch of his civil rights during the May 12, 2023 visit.[78] They also argue we must grant summary judgment if no underlying civil rights violation exists to anchor the conspiracy claim.[79] Mr. Lynch concedes we must grant summary judgment if we dismiss his anchoring First Amendment retaliation claim.[80] We agree.

Mr. Lynch must establish: 1) the existence of a conspiracy involving state action; and 2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.[81] A section 1983 civil conspiracy requires an underlying federal civil rights violation.[82]

We are guided by our colleagues reviewing similar claims. Judge Leeson granted summary judgment because no genuine dispute of material fact existed as to the underlying federal civil rights violations, leaving no viable claim to support the conspiracy claim.[83] Judge Davis similarly granted summary judgment after finding no constitutional violation.[84] But Judge Murphy denied summary judgment after finding genuine issues of material fact in the anchoring underlying federal civil rights violations.[85]

We found no genuine issue of material fact for Mr. Lynch's First Amendment retaliation claim. There is no underlying federal civil rights violation to anchor Mr. Lynch's conspiracy claim.

We grant summary judgment in favor of the Haverford Township Officers as to the civil rights conspiracy claim arising from the May 12, 2023 house visit.

### C. We grant summary judgment dismissing Mr. Lynch's civil trespass claim against Sergeants Long and Bedrossian.

Sergeants Long and Bedrossian move for summary judgment on the Pennsylvania civil trespass claim arguing they did not trespass under Pennsylvania law when they visited Mr. Lynch's parents' home on May 12, 2023.[86] They argue police officers have an implicit license to walk up to one's house and knock on the door if they want to speak with an occupant of the house.[87] Sergeants Long and Bedrossian also argue they acted in the scope of their legitimate lawful duties so Mr. Lynch cannot establish willful misconduct to overcome governmental immunity.[88] Mr. Lynch counters we held "occupancy, leave, and remaining" as the elements he must prove for his civil trespass claim.[89] Mr. Lynch also argues he asked the police to leave and they did not listen to his request.[90] We agree with Sergeants Long and Bedrossian.

At the outset Mr. Lynch must have the exclusive use and possession of the property to maintain a claim for trespass.[91] An individual "is liable for trespass under Pennsylvania law when they 'intentionally ente[r] land in the possession of another without privilege to do so. . . .'"[92] But this right cannot stop law enforcement checking on a resident's mental health after the resident has a mental health episode at the police station. When "a law enforcement officer lawfully enters private property because the entry is privileged . . . the officer is not liable for trespass."[93] "[O]fficers may generally take actions that 'any private citizen might do' without fear of liability."[94] An implied license also may create privilege to enter another's property.[95]

The Pennsylvania General Assembly through the Pennsylvania Subdivision Tort Claims Act also immunizes local agencies from liability for damages caused by the agency's or its employee's conduct.[96] But this immunity does not bar claims against individuals when their

actions constitute willful misconduct.[97] "Willful misconduct occurs when the actor 'desired to bring about the result that followed, or at least he was aware that it was substantially certain to ensue.'"[98] The employee enjoys governmental immunity to the same extent as a local agency if the conduct is not willful misconduct.[99] An enumerated exception must apply and a plaintiff must root their claim in negligence for governmental immunity to be inapplicable.[100]

We find no genuine issue of material fact as to Mr. Lynch's civil trespass claim. Mr. Lynch has not adduced evidence showing exclusive use and possession of his parents' home. Mr. Lynch does not dispute he lived in his parents' home on May 12, 2023.[101] He also does not dispute his parents own and possess the home.[102] Without possession Mr. Lynch cannot bring a civil trespass claim against Sergeants Long and Bedrossian. Mr. Lynch argues we held the elements for civil trespass under Pennsylvania law as "occupancy, leave, and remaining[.]"[103] We find this argument unpersuasive. Mr. Lynch cites our April 7, 2026 Memorandum at pages twenty-four and twenty-six to show our apparent holding of "occupancy, leave, and remaining."[104] Our study of our earlier opinion does not show us holding "occupancy, leave, and remaining" as elements for a Pennsylvania trespass claim.[105] We explained the Pennsylvania General Assembly's requirements to prove a trespass and immunity extended to local officials.[106] Mr. Lynch misstates our earlier Opinion and the requirements for a Pennsylvania trespass claim.

We also find Mr. Lynch did not adduce evidence Sergeants Long and Bedrossian committed state law trespass. The undisputed evidence confirms Sergeants Long and Bedrossian entered Mr. Lynch's parents' property with mental health professionals out of concern for Mr. Lynch.[107] Sergeants Long and Bedrossian walked onto the property to knock on the door.[108] But this is an action a private citizen may take without fear of liability.[109] Mr. Lynch did not adduce evidence Sergeants Long and Bedrossian took actions a private citizen could not take because they

would fear liability. To the contrary the Sergeants walked onto the property and left promptly once the mental health professionals felt safe.[110] Sergeants Long and Bedrossian's actions are protected and no genuine issue of material fact exists to prove otherwise.

We grant Sergeants Long and Bedrossian's Motion for summary judgment as to Mr. Lynch's civil trespass claim.[111]

**D. We decline to extend the fugitive disentitlement doctrine.**

Detectives Vernacchio and Fuller and Sergeants Long and Bedrossian argue Mr. Lynch is precluded from relief before us as "a fugitive from justice in the Commonwealth of Pennsylvania" under the fugitive disentitlement doctrine.[112] Mr. Lynch counters the fugitive disentitlement doctrine does not apply and the cases Detectives Vernacchio and Fuller and Sergeants Long and Bedrossian cite are not the correct authority.[113] We decline to extend the applicability of the fugitive disentitlement doctrine under the undisputed facts.

The fugitive disentitlement doctrine exists as "an equitable rule that allows a trial or appellate court to limit a fugitive's access to civil and criminal courts."[114] We may limit access when a fugitive is seeking relief on a pending matter.[115] Dismissal under this limitation is appropriate when a connection exists between a plaintiff's fugitive status and the civil action.[116] Violation of a court order to appear is appropriate grounds for dismissal.[117] A criminal fugitive's flight can operate as an affront or insult to the dignity of the Court.[118] But dismissal is discretionary so we must follow the doctrine's equitable nature if we limit Mr. Lynch's access to the courts.[119]

The parties do not provide authority where a colleague invoked the fugitive disentitlement doctrine in a fact scenario like this Action. We now turn to the authorities cited by the parties to offer context of differing facts. For example, in *Molinaro v. New Jersey*, the Supreme Court declined to adjudicate a petitioner's case because he failed to surrender himself to state authorities

while free on bail therefore becoming a fugitive from justice.[120] Mr. Lynch is not free on bail so we find this comparison unpersuasive.

In *Government of Virgin Islands v. James*, Judge Christian found John Winston James guilty of two counts after petitioner waived his right to a jury trial.[121] Mr. James appealed.[122] But Mr. James escaped custody while being transferred between prisons during the appeal process.[123] Our Court of Appeals dismissed the appeal because Mr. James became a fugitive from justice when he left the Court's custody.[124] Mr. Lynch never left our custody or the custody of the Commonwealth.

In *Maydak v. United States Department of Education*, Keith Maydak failed to appear for a hearing while on supervised release and violated the conditions of his release.[125] Mr. Maydak fled to Canada while a warrant remained pending for his arrest.[126] Mr. Maydak then filed suit under the Freedom of Information Act while in Canada in the same court where he evaded arrest.[127] Canadian authorities arrested Mr. Maydak and extradited him back to the United States.[128] Judge Bloch dismissed Mr. Maydak's Freedom of Information Act suit.[129] Our Court of Appeals upheld the dismissal.[130] It explained Judge Bloch did not abuse his discretion by invoking the fugitive disentitlement doctrine because Mr. Maydak fled to Canada in "complete disregard of [Judge Bloch's] authority to adjudicate the supervised release violations" and Mr. Maydak's Freedom of Information Act suit insulted Judge Bloch.[131] Enough of a connection existed between Mr. Maydak's fugitive status and his lawsuit to justify applying the doctrine.[132] Mr. Maydak fled the same court where he filed his Freedom of Information Act suit.[133] But our Court of Appeals also emphasized our discretion in invoking the fugitive disentitlement doctrine especially when considering the prejudice the doctrine may create.[134]

We distinguish Mr. Lynch's Action from the facts in *Maydak*. Mr. Maydak filed his Freedom of Information Act suit in the same court he fled from.[135] But Mr. Lynch filed suit before us relating to the May 12, 2023 conduct.[136] The May 12, 2023 conduct is not the issue relating to the Commonwealth's outstanding warrant for his arrest.[137] We decline to extend the fugitive disentitlement doctrine to Mr. Lynch's claims challenging the May 12, 2023 visit to his parents' home.

In *Lazaridis v. Wehmer*, our Court of Appeals vacated Judge Robinson's application of the fugitive disentitlement doctrine.[138] Judge Robinson *sua sponte* dismissed an action finding the petitioner's fugitive status at the state level had a connection to the current civil action.[139] Our Court of Appeals disagreed finding the connection was "too slim a reed" to support the weight of the disentitlement doctrine.[140]

In *United States v. Munoz*, Judge Kelly invoked the fugitive disentitlement doctrine.[141] Mr. Munoz pleaded guilty to twelve counts of conspiracy, wire fraud, mail fraud, and interstate transportation of stolen property.[142] Judge Kelly sentenced Mr. Munoz to forty months incarceration followed by three years of supervised release.[143] Judge Kelly ordered Mr. Munoz to report to federal custody to begin serving his sentence on June 21, 2011.[144] Mr. Munoz appealed.[145] Mr. Munoz did not report to federal custody on June 21, 2011.[146] Our Court of Appeals denied Mr. Munoz's appeal on August 10, 2011 due to his fugitive status.[147] Mr. Munoz moved to vacate, set aside or correct the sentence imposed on him by Judge Kelly raising ineffective assistance of counsel.[148] Mr. Munoz claimed his counsel did not: (1) file a motion to stay the appeal until his recapture, (2) seek reinstatement of his appeal, and (3) petition our Court of Appeals to reconsider the dismissal of his claims.[149]

Judge Kelly found Mr. Munoz's counsel could not be ineffective by failing to file additional motions with our Court of Appeals because of Mr. Munoz's fugitive status and our Court of Appeals denying his appeal invoking the fugitive disentitlement doctrine.[150] Mr. Lynch did not fail to report to federal custody as we do not have a warrant for his arrest.

Our Court of Appeals emphasized our discretion in *Galeas Figueroa v. Attorney General of the United States* when it declined to invoke the fugitive disentitlement doctrine.[151] It underscored the discretionary nature of the doctrine when the respondent failed to provide sufficient evidence of the petitioner's fugitive status.[152]

Our independent study revealed no fact pattern where a colleague invoked the fugitive disentitlement doctrine to dismiss the fugitive's claims unrelated to the ongoing criminal proceeding. We decline to dismiss Mr. Lynch's May 12, 2023 claims based on the fugitive disentitlement doctrine.

## III. Conclusion

We grant the Haverford Township Officers' partial Motion for summary judgment as to all claims arising from the May 12, 2023 encounter. We now await the parties' reports on the progress of the criminal prosecution relating to the October 31, 2023 conduct.[153]

---

[1] The Haverford Township Officers timely moved for partial summary judgment. ECF 207. Our Policies require parties moving for relief under Fed. R. Civ. P. 56 to include a Statement of Undisputed Material Facts from each moving defendant and an appendix to support summary judgment. The Haverford Township Officers filed their Motion (ECF 207), Statement of Undisputed Material Facts ("Haverford Township Officers SUMF") (ECF 207), Memorandum in support of summary judgment (ECF 207), and Appendix ("D-01–D-86") (ECFs 207-1–207-13). Mr. Lynch opposed the Motion (ECFs 211, 212), responded to the Haverford Township Officers' Statement of Undisputed Material Facts (ECF 211-1), included additional undisputed facts (ECF 211-1), and an appendix referencing documents submitted by the Haverford Township Officers and other documents filed on the docket (ECF 211-3). Mr. Lynch filed two identical oppositions. ECFs 211, 212. We reference his first-filed opposition throughout our analysis. ECF 211.

Mr. Lynch did not provide an appendix of documents. ECF 211-3. His appendix is merely an index of documents without the underlying supporting evidence. ECF 211-3. For example, Mr. Lynch

cites "192a-193a Detective Joseph Fuller Affidavit of Probable Cause, October 31, 2023 (date of birth redacted; '[i]n the past months')[;] 194a HTPD Directive 2.7.8, Mental Health, issued February 2021 (cover / in force May 12) [; and] 195a Plaintiff's June 24, 2026 discovery response (Supplemental Responses, ECF 123): 'the video recordings identified in Directive 5' -- not the Kenny voicemail at 105a." But we have no way to view evaluate this evidence without the underlying documents.

The Haverford Township Officers filed a Reply and responded to Mr. Lynch's Statement of Undisputed Material Facts. ECFs 213, 214.

[2] Haverford Township Officers SUMF ¶¶ 2–3. Mr. Lynch moved to an undisclosed country allegedly seeking asylum from criminal charges brought against him arising from his conduct toward Haverford Township officers during and after an October 31, 2023 hearing before a Magisterial District Justice in his parents' hometown. Mr. Lynch claims constitutional violations arising from the October 31, 2023 conduct in this Action but the parties agreed to stay those issues consistent with *Younger v. Harris*, 401 U.S. 37, 43–44 (1971). ECF 186 at 11–13; ECF 188 at 3, 14–16; ECF 191.

We today only address the issues surrounding the May 12, 2023 encounter at the Lynch residence. We are not addressing the criminal prosecution and Mr. Lynch's claims relating to the October 31, 2023 conduct.

[3] Haverford Township Officers SUMF ¶ 4.

[4] *Id.*

[5] *Id.*

[6] *Id.* ¶ 5; D-15.

[7] Haverford Township Officers SUMF ¶ 5; D-15.

[8] Haverford Township Officers SUMF ¶¶ 6–7; D-07; D-15. Detective Fuller is currently a patrol officer with the Haverford Township Police Department. D-07.

[9] Haverford Township Officers SUMF ¶ 8; D-15.

[10] Haverford Township Officers SUMF ¶ 11; D-15.

[11] D-15.

[12] D-05.

[13] D-15.

[14] Haverford Township Officers SUMF ¶ 13; D-01; D-16. Sergeant Long is now Deputy Chief of Haverford Township Police Department. D-01.

[15] Haverford Township Officers SUMF ¶ 13; D-01; D-16.

[16] Haverford Township Officers SUMF ¶ 14; D-01–02; D-16.

[17] Haverford Township Officers SUMF ¶ 15; D-01; D-16.

[18] Haverford Township Officers SUMF ¶ 15; D-01. Mr. Lynch denied receiving a mental health diagnosis in sworn discovery responses. Haverford Township Officers SUMF ¶ 32; D-11. But Brandywine Neuropsychology Associates evaluated Mr. Lynch in 2023 after a referral from his neurologist. D-87. Mr. Lynch reported a history of emotional distress including anxiety, depression, and mood instability often in response to emotional stressors at the 2023 evaluation. D-88.

[19] Haverford Township Officers SUMF ¶ 15; D-01; D-16.

[20] Haverford Township Officers SUMF ¶ 16; D-01; D-03; D-16.

[21] Haverford Township Officers SUMF ¶ 31.

[22] *Id.* ¶ 17; D-02–03.

[23] Haverford Township Officers SUMF ¶ 18.

[24] *Id.* ¶¶ 18, 20; D-03.

[25] Haverford Township Officers SUMF ¶ 20; ECF 207-13.

[26] Haverford Township Officers SUMF ¶ 19; D-02.

[27] Haverford Township Officers SUMF ¶¶ 20, 24; ECF 207-13.

[28] Haverford Township Officers SUMF ¶¶ 3, 20; ECF 207-13.

[29] Haverford Township Officers SUMF ¶ 23; D-04; ECF 207-13.

[30] Haverford Township Officers SUMF ¶¶ 3, 20; D-02–03.

[31] Haverford Township Officers SUMF ¶ 26; D-04.

[32] Haverford Township Officers SUMF ¶ 22.

[33] *Id.* ¶ 28; D-02; D-04.

[34] *Id.*

[35] Haverford Township Officers SUMF ¶ 25; D-02.

[36] D-02.

[37] *Id.*

[38] ECF 1.

[39] ECF 1 at 16–21 (using the pagination assigned by the CM/ECF docketing system).

[40] ECF 12.

[41] ECF 14.

[42] ECFs 19, 20.

[43] No. 25-3442; No. 25-6195.

[44] ECF 36. *See also* ECFs 28, 33.

[45] ECF 37.

[46] ECF 41.

[47] ECF 42.

[48] *Id.*

[49] ECF 44.

[50] ECF 45.

[51] ECF 55. We also allowed Mr. Lynch to proceed on his claims arising from conduct occurring on October 31, 2023 leading to the officers arresting Mr. Lynch and an ongoing criminal prosecution presently awaiting Mr. Lynch's return to the United States after a claim of asylum in an undisclosed country. *See* ECF 137 ¶ 27; ECF 146 at 20; ECF 153; ECF 161, July 27, 2026 Hearing Tr. 10:16–19.

[52] ECF 55.

[53] ECF 207. Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party does not prevent summary judgment. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). When determining whether a disputed fact is genuine, we draw all inferences in favor of the non-moving party. *Id.* We do not weigh evidence or make credibility determinations. *Spivack v. City of Phila.*, 109 F.4th 158, 165–66 (3d Cir. 2024) (citing *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021)). The Supreme Court "outlined two closely related methods for a movant to succeed at summary judgment": (1) under the "standard approach," the moving party may produce material facts, genuinely undisputed, entitling it to judgment as a matter of law; and (2) under the "*Celotex*

approach," the moving party "may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case … *on which that party will bear the burden of proof at trial*.'" *Mall Chevrolet, Inc. v. General Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Summary judgment is appropriate where the nonmoving party does not make a showing sufficient to establish the existence of an element essential to its case and on which it bears the burden of proof at trial. *SodexoMAGIC*, 24 F.4th at 204 (citing *Celotex Corp*., 477 U.S. at 322).

[54] ECF 211.

Mr. Lynch begins his opposing memorandum with two and a half pages critiquing the Haverford Township Officers' filings. *Id.* at 4–6. Mr. Lynch claims they "clustered a Statement of Undisputed Material Facts inside the same 34-page filing as the motion, proposed order and memorandum" in violation of our Policies. *Id.* at 4. Mr. Lynch points out other "wrongs" and asks us to somehow consider them in our analysis. ECF 211 at 4–6; *see, e.g.*, "[t]hey quoted that sentence with an extra comma…" *Id.* at 10. But Mr. Lynch is focused on the wrong issues. We remind Mr. Lynch we must view the evidence in the light most favorable to him as the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 599 (1986). But "arguments made in briefs are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 560 (E.D. Pa. 2019) (quoting *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985)). We turn to the undisputed evidence in granting summary judgment.

[55] ECF 207 at 19–23.

[56] ECF 211 at 14–15.

[57] *Id.* at 17 (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 759 (3d Cir. 2019)). Mr. Lynch spends most of his Opposition citing the Haverford Township Officers' arguments and exhibits. Mr. Lynch includes cites to unidentified documents and pages with no supporting evidence.

[58] *Baloga*, 927 F.3d at 759.

[59] *Id.* at 752.

[60] *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

[61] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[62] *See* Haverford Township Officers SUMF ¶ 4.

[63] *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).

[64] *Johnson v. Campbell*, 332 F.3d 199, 213 (3d Cir. 2003).

[65] *See Lane v. Franks*, 573 U.S. 228, 235–36 (2014) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)) ("Speech by citizens on matters of public concern lies at the heart of the First

Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people[.]'"); *Myers v. City of Wilkes-Barre*, 448 F. Supp. 3d 400, 414 (M.D. Pa. 2020) (citing *Lane*, 573 U.S. at 241) ("Speech relating to misconduct by government officials clearly involves matters of public concern.").

[66] *Baloga*, 927 F.3d at 758.

[67] *Watson*, 834 F.3d at 423.

[68] *Baker v. Benton Area Sch. Dist.*, 418 F. Supp. 3d 17, 50–51 (E.D. Pa. 2019)

[69] Haverford Township Officers SUMF ¶ 15; D-01; D-16.

[70] *Henderson v. Matthews*, 502 F. Supp. 3d. 970, 975 (E.D. Pa. 2020).

[71] *Watson*, 834 F.3d at 423.

[72] Haverford Township Officers SUMF ¶ 15; D-01; D-16.

[73] D-05.

[74] Haverford Township Officers SUMF ¶ 15; D-01; D-16.

[75] *Price v. City of Phila.*, 239 F. Supp. 3d 876, 890 (E.D. Pa. 2017).

[76] Haverford Township Officers SUMF ¶ 13; D-01; D-16.

[77] ECF 207 at 23–24.

[78] *Id.*

[79] *Id.* at 24–25.

[80] ECF 211 at 19–21.

[81] *Frompovicz v. Hissner*, 434 F. Supp. 3d 269, 283 (E.D. Pa. 2020), *aff'd* 843 F. App'x 427 (3d Cir. 2021).

[82] *Id.* (citing *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 359 (E.D. Pa. 2009)).

[83] *Id.*; *Dondero v. Lower Milford Twp.*, 431 F. Supp. 3d 590, 606 (E.D. Pa. 2019).

[84] *Nelson v. Pa., Cnty. of Del.*, No. 8-2224, 2010 WL 11451567, at *4 n.5 (E.D. Pa. Apr. 30, 2010) ("Because we find that there is no constitutional violation in this case, Plaintiff's conspiracy to maliciously prosecute claim fails.").

[85] *Hicks v. City of Phila.*, 783 F. Supp. 3d 834, 858 (E.D. Pa. 2025).

[86] ECF 207 at 15–19.

---

[87] *Id.*

[88] *Id.*

[89] ECF 211 at 9.

[90] *Id.* at 11.

[91] *Blythe Recycling & Demolition Site Holdings, Inc. v. Kuperavage*, No. 25-01910, 2026 WL 2719805, at *3 (M.D. Pa. Sept. 15, 2026) ("To bring an action for trespass a plaintiff 'must have had exclusive use and possession of the property at issue.'" (quoting *Roth v. Cabot Oil & Gas Corp.*, 919 F. Supp. 2d 476, 492 (M.D. Pa. 2013))).

[92] *Colon v. Kinnel*, No. 21-3337, 2023 WL 1783774, at *14 (E.D. Pa. Feb. 6, 2023) (quoting *Kopka v. Bell Tel. Co. of Pa.*, 91 A.2d 232, 235 (Pa. 1952)); *see also* Restatement (Second) of Torts § 163; *Boring v. Google Inc.*, 362 F. App'x 273, 280 (3d Cir. 2010).

[93] *Ruiz-Rivera v. City & Cnty. of Lancaster*, No. 21-2105, 2021 WL 4145054, at *8 (E.D. Pa. Sept. 9, 2021); *Klein v. Madison*, 374 F. Supp. 3d 389, 431 (E.D. Pa. 2019).

[94] *Caniglia v. Strom*, 593 U.S. 194, 198 (2021) (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (internal citations omitted)).

[95] *Moss v. Aaron's, Inc.*, 140 F. Supp. 3d 441, 446–47 (E.D. Pa. 2015) (quoting *Flordia v. Jardines*, 569 U.S. 1, 8 (2013) ("[T]he United States Supreme Court has described the implied license as permission to 'approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave.'")).

[96] 42 Pa. Cons. Stat. § 8541(1980).

[97] 42 Pa. Cons. Stat. § 8550 (1980).

[98] *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1023 (Pa. Commw. Ct. 2014) (quoting *R.H.S. v. Allegheny Cnty. Dep't of Hum. Servs.*, 936 A.2d 1218, 1230 (Pa. Commw. Ct. 2007)).

[99] *Id.*

[100] *Id.* (citing 42 Pa. Cons. Stat. § 8542(b) (1980)).

[101] ECF 211-1 ¶ 2.

[102] *Id.* ¶ 3.

[103] ECF 211 ¶ 19.

[104] *Id.*; *see also* ECF 54 at 24, 26.

[105] *See* ECF 54.

---

[106] *Id.* at 24.

[107] Haverford Township Officers SUMF ¶ 16; D-01; D-03; D-16.

[108] Haverford Township Officers SUMF ¶¶ 16–17; D-01–03; D-16.

[109] *Caniglia v. Strom*, 593 U.S. 194, 198 (2021) (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (internal citations omitted)).

[110] Haverford Township Officers SUMF ¶ 28; D-02; D-04.

[111] We need not opine whether the Haverford Township Officers enjoy qualified immunity.

[112] ECF 207 at 29.

[113] ECF 211 at 6, 8, 21. Mr. Lynch does not provide other authority. *Id.*

[114] *United States v. Munoz*, Nos. 10-126, 12-4917, 2013 WL 172205, at *3 (E.D. Pa. Jan. 16, 2013) (quoting Black's Law Dictionary (9th ed. 2009)).

[115] 28 U.S.C. § 2466; *Lazaridis v. Wehmer*, No. 7-3572, 2008 WL 3823906, at *2 (3d Cir. 2008) (quoting *Degen v. United States*, 517 U.S. 820, 824 (1996)).

[116] *Lazaridis*, 2008 WL 3823906, at *2 (quoting *Barnett v. YMCA, Inc.*, 268 F.3d 614, 618 (8th Cir. 2001)).

[117] *See Galeas Figueroa v. Att'y Gen. U.S.*, 998 F.3d 77, 85 (3d. Cir. 2021).

[118] *Maydak v. U.S. Dep't of Educ.*, 150 F. App'x 136, 137 (3d Cir. 2005).

[119] *Galeas Figueroa*, 998 F.3d at 85; *see Lazaridis*, 2008 WL 3823906, at *2.

[120] 396 U.S. 365, 365 (1970).

[121] 621 F.2d 588, 589 (3d Cir. 1980)

[122] *Id.*

[123] *Id.*

[124] *Id.*

[125] 150 F. App'x 136, 136–37 (3d Cir. 2005).

[126] *Id.* at 136.

[127] *Id.* at 136–37.

[128] *Id.* at 137.

---

[129] *Id.* at 138.

[130] *Id.*

[131] *Id.* at 137.

[132] *Id.*

[133] *Id.*

[134] *Id.*

[135] *Id.* at 136–37.

[136] ECF 1.

[137] *See* ECF 191 ¶ 1.

[138] 288 F. App'x 800, 803 (3d Cir. 2008).

[139] *Id.* at 802.

[140] *Id.* at 802–03 (quoting *Walsh v. Walsh*, 221 F.3d 204, 215 (1st Cir. 2000)).

[141] No. 12-4917, 2013 WL 172205, at *6 (E.D. Pa. Jan. 16, 2013).

[142] *Id.* at *1.

[143] *Id.*

[144] *Id.*

[145] *Id.*

[146] *Id.*

[147] *Id.* at *1, *5.

[148] *Id.* at *1–*2.

[149] *Id.* at *3.

[150] *Id.* at *5.

[151] 998 F.3d 77, 86 (3d Cir. 2021).

[152] *Id.*

[153] ECF 220.